The Western Union Telegraph Company v. Ella Neel et al.

No. 80.

### Duty of Telegraph Company—Office Hours.

A telegram was sent from Yoakum to Cuero, Texas, July 29, 1891, at 4 o'clock, a. m. The message reached Cuero at 4:50. The office hours at Cuero were from 7 a. m. to 7 p. m. The carrier boy did not reach the office before 7 a. m., and the message was promptly delivered after the opening of the office. In suit for damages for delay in the delivery of the message (in which recovery was had by plaintiff), the court should have given the following requested charge: "All messages to be sent by telegraphic wires are accepted subject to the delays ordinarily incurred during transmission; and if the jury believe from the evidence that the defendant company had reasonable office hours during which it delivered telegraphic messages in the town of Cuero, it was not by law compelled to deliver messages outside of said hours; and such reasonable office hours were implied in the contract between the plaintiff and the defendant company, if such contract has been proved, unless specially stated or understood by the parties to said contract that the service to be performed should be performed otherwise than in the usual manner, and subject to the usual rules under which the company does business." ................................... 371

Certified Question from Court of Civil Appeals for First District, in an appeal from De Witt County.

*Kleberg & Crain* and *John Lovejoy*, for appellant.—Office hours, like the necessary delays in sending a telegram from one relay office to another, is one of those reasonable rules of a telegraph company which is implied in all its contracts with persons sending messages over its wires, and of which they are bound to take notice, unless the company agrees to deliver messages outside of business hours. Tel. Co. v. Harding, 103 Ind., 505; Given v. Tel. Co., 24 Fed. Rep., 119.

*Walton, Hill & Walton*, also for appellant.—1. In declaring the law governing the rights of parties to a contract with reference to a particular line of business, courts look to the customs, practices, and methods adopted by those engaged in such a business, and if found reasonable and not subversive of rights of others, will treat them as the common law governing such business, and will construe the contract as made with reference to, and by implication making the law or customs of the business part of it. Pome. on Mun. Law, sec. 301; Cool. on Labor and Capital before the Law, North Am. Rev., Dec., 1884.

Such customary law of a business has been held incorporated in a contract, although unknown to one party and different from general law. Mills v. Bank, 11 Wheat., 431; Pillsbury v. O'Neill, 1 Pa. St., 343; Lawson on Usage and Customs, 53, sec. 23.

2.  A telegraph company may adopt reasonable regulations for the government of its business with the public.    Tel. Co. v. Neill, 57 Texas, 289; Scott & Jarn. on Tel., sec. 162; Gray on Com. by Tel., secs. 13, 18; Womack v. Tel. Co., 58 Texas, 180.

3.  Persons dealing with telegraph companies are, like those dealing with railroads or other branches of· public service, held to contract with reference to the rules and regulations of such business as to office hours, schedules of trains, etc., whether known or not, provided they be ascertainable on reasonably inquiry.    Burney v. Tel. Co., 18 Md., 341; Tel. Co. v. Gildersleeve, 29 Md., 232; Tel. Co. v. Hardy, 103 Ind., 505; Given v. Tel. Co., 24 Fed. Rep., 119.

4.  Except where the rule, known to one party, but unknown to the other at time of contract, is such that operates to render the contract ineffectual to accomplish the object for which it is expressly or manifestly entered into.    In other words, where under the law of estoppel the rule can not be set up against the party who did not know of it.    Tel. Co. v. Broesche, 72 Texas, 654.    The following cases recognized, at least by inference, the right of a telegraph company to confine its operations to office hours:    Tel. Co. v. Rosentreter, 80 Texas, 418; Tel. Co. v. Bruner, 19 S. W. Rep., 149; Tel. Co. v. Merrill, 22 S. W. Rep., 826.

*Proctor & Proctor*, *Pleasants & Bailey*, and *A. B. Davidson*, for appellees.—1.  The question of reasonable rules and regulations is purely a question of fact for the jury, who have passed upon it with all of the facts before them in this case, and by their verdict have said whether such rules and regulations existed as were alleged, and whether they were reasonable.

2.  Appellant company having received this telegram for transmission, and its agent having actually informed the sender that the message had been received at Cuero, thereby obligated itself to deliver said message after said reception at Cuero, Texas, within a reasonable time; and this question of reasonable time was one for the jury, and regulations of the Cuero office uncommunicated to the sender have nothing to do with this matter of delivery; and therefore the charge of the court was even more favorable to the defendant than that to which it was strictly entitled.    Tel. Co. v. Bruner, 19 S. W. Rep., 149; Tel. Co. v. Broesche, 72 Texas, 654; Tel. Co. v. Anderson, 84 Texas, 20.

GAINES, ASSOCIATE JUSTICE.—" Upon the trial of the above entitled cause in the court below, it was shown, that Jodie Roden, a sister of the appellee Ella Neel, was lying at the point of death at her home near Hope, in Lavaca County; that a brother of appellee went to the town of Yoakum, where appellant had an office, about 4 o'clock in the morning of

July 29, 1891, and caused a telegram to be sent to Cuero to be addressed to Mrs. Neel, care of the Dromgoole Hotel, asking her to come to her sister at once.    The telegram was received at Cuero about 4:50 o'clock, but was not delivered until about 10 o'clock on the same morning.    Mrs. Neel set out at once to go to her sister, but Mrs. Roden had died when Mrs. Neel arrived.    If the telegram had been delivered promptly when it was received at Cuero, Mrs. Neel could have reached her sister before she died.

"In defense of this suit for failure to deliver said telegram promptly, the appellant pleaded and proved, that its office hours at Cuero were from 7 o'clock a. m. to 7 o'clock p. m., and that the messenger did not reach the office until 7 o'clock a. m.; and there was evidence that after this hour the telegram was promptly delivered; and it alleged that the fixing of office hours was a reasonable regulation, that it was permitted by law to make.

"The court charged the jury, in effect, that such regulation was proper, but that the sender of the telegram must either know or be reasonably presumed to know of it, or be informed thereof by defendant's agent.

"The defendant then requested the following instruction to the jury: 'All messages to be sent by telegraphic wire are accepted subject to the delays ordinarily incurred during transmission; and if the jury believe from the evidence that the defendant company had reasonable office hours, during which it delivered telegraphic messages in the town of Cuero, it was not by law compelled to deliver messages outside of said hours; and such reasonable business hours were implied in the contract between the plaintiff and defendant company, if such contract has been proved, unless specially stated or understood by the parties to said contract that the services to be performed should be performed otherwise than in the usual manner and subject to the usual rules under which the company does business.'

"The instruction asked by the defendant was pertinent, because if the message had been delivered within a reasonable time after 7 o'clock, the plaintiff would probably not have had time to see her sister before she died."

Upon the foregoing statement, which we have quoted from the certificate of the Court of Civil Appeals, they submit to us the following questions:

"Believing that it has never been authoritatively settled by our Supreme Court, that it is the duty in such case of the telegraph company to give notice to the sender of a dispatch of the office hours at the receiving office, provided they are established and reasonable, and that the message will not be delivered outside of such office hours, we certify for the decision of the Supreme Court, which arises on appeal to this court, whether or not, in the absence of proof of a special contract to send and deliver

at once, and the absence of actual notice to the sender of the regulation and office hours, the undertaking of the company was to deliver the message at once.

"Should the instruction have been given?"

We are of the opinion, that under the circumstances stated in the question, it was not the duty of the company to deliver before its office hours, and that the requested charge should have been given. A telegraph company, from the necessity of the case, must have power to make some regulations for the conduct of its business; and when such regulations are reasonable, it is generally conceded that a party who contracts with such a company for the transmission of a message is bound by them, provided he has notice of their existence. But whether or not he is bound when he has no notice, is a question which is by no means settled. We concur with the Court of Civil Appeals in holding that the question has never been authoritatively determined in this court.

Under the peculiar circumstances of the case, it was held in Western Union Telegraph Company v. Broesche, 72 Texas, 654, that the fact that the company's office at the delivering station was closed at the time the dispatch was transmitted, did not exonerate it from liability. But the agent of the company who accepted the message for transmission testified, that he knew that the purpose was to notify the person addressed of the expected arrival of the dead body of the plaintiff's wife at the railway station, and that unless it was delivered on the same evening the corpse would reach the station before the telegram. Having received the plaintiff's money, knowing his object in sending the message, and that that object could only be attained by prompt transmission and delivery to the person addressed, it could not legally urge its rules as to office hours as an excuse for not delivering the dispatch until the next day. It was properly held estopped to deny that the contract was for an immediate delivery.

In the Bruner case, 19 Southwestern Reporter, 149, it would seem that the defense was set up, that at the time the dispatch was taken for transmission the office to which it was to be sent was closed; but we think it is apparent from the opinion that the point before us was not involved. The court in their opinion say: "Appellant accepted the telegram and undertook to deliver it about 9 o'clock at night. It can not be excused in its failure to perform the contract because its office was practically closed against Alvin, especially since it does not appear that any effort was made to send the message until next morning, when it was too late for the appellee to catch the train to Galveston."

Upon the more general question, whether a party to a contract with a telegraph company is bound by the rules and regulations of the company of which he has no notice, the authorities are not in accord.

In Birney v. Telegraph Company, 18 Maryland, 341, the court say,

that a person delivering a message for transmission "is supposed to know that the engagements of the company are controlled by those rules and regulations, and does himself in law engraft them in his contract of bailment, and is bound by them." The doctrine is reaffirmed in Telegraph Company v. Gildersleeve, 29 Maryland, 232; but is questioned by Judge Thompson in his work on the Law of Electricity (section 212). The law of Maryland expressly provides that telegraph companies may make rules and regulations, and the opinions in the cases cited lay stress upon that fact; but it seems to us, that in the absence of a statute the power is necessarily implied.

In Given v. Telegraph Company, 24 Federal Reporter, 119, it was held, in effect, that a telegraph company could establish reasonable office hours, and that the sender of a message was presumed to contract with reference to such a regulation, although it was not known to him at the time that he entered into the contract.

In Telegraph Company v. Harding, 103 Indiana, 505, the same rule was applied in an action for the recovery of a penalty given by statute for the failure to make prompt delivery of a message; but the court expressly decline to say that it ought to apply to an ordinary suit for the recovery of damages for the breach of a contract to transmit a telegram. The court quote from the opinion of Mr. Justice Miller in Given's case, supra, as follows: "Nor do we see that it is the duty of the Western Union Telegraph Company to keep the employes of every one of its offices in the United States informed of the time when any other office closes for the night. The immense number of these offices over the United States, the frequent changes among them as to the time of closing, and the prodigious volume of a written book on this subject, seems to make this onerous and inconvenient to a degree which forbids it to be treated as a duty to its customers, for the neglect of which it must be held liable for damages. There is no more obligation to do this in regard to offices in the same State than those four thousand miles away, for the communication is between them all and of equal importance."

The Indiana court also quote as follows from the opinion in Stevens v. Telegraph Company, 16 U. C. Q. B., 530: "Having selected that route, it may be asked, was there any obligation on part of the defendants to inform him on the 23rd of November that the line was then, at the receipt of the message, out of order? I do not see that any such obligation existed. The company was bound only to transmit as soon as it could reasonably be done. * * * Therefore it appears to me it is not reasonable to expect that the company is bound on any occasion to inform him that possibly the message may not be forwarded for some minutes or some hours. It is more reasonable, I think, to cast the burthen of responsibility upon the person presenting messages to be forwarded of inquiring whether they can be sent in any particular time, or of giving information

of the particular importance it may be to the party that the message should be forwarded without delay.''

After these quotations the court say: " It may be well to state that the members of this court are not all agreed as to the validity of the reasoning contained in the foregoing opinions, and are not therefore to be deemed as committing themselves to them as authority."

In Behm v. Telegraph Company, 8 Bissell, 131, Judge Gresham, in charging the jury, recognized the doctrine, that reasonable regulations as to the number of servants at small stations should be considered in determining the question of diligence in the delivery of a message, and that the absence of a messenger boy at dinner might be a just excuse for delay in such delivery. But see Tel. Co. v. Henderson, 89 Ala., 510.

Such are the cases bearing immediately upon the question submitted for our determination. There are, however, some railroad cases which seem to involve a similar principle. The contract of a railroad company with a passenger is to carry him to his point of destination under the contract without unreasonable delay. Yet it is held, that a passenger who procures a ticket has no right to demand an immediate carriage, and must wait till the departure of the regular trains. Hurst v. Railway, 19 C. B., N. S., 310; Gordon v. Railway, 52 N. H., 596. There are delays which grow out of the necessary regulation of the business, for which the carrier can not be held responsible. If a passenger, on the other hand, be misled by the company's time table, and buy his ticket upon the faith of it, the company may be held liable for not carrying him according to the table. In an English case of this character the action was sustained on the ground of deceit. Denton v. Railway, 5 El. & Bl., 860.

A limit as to the number of its trains and intervals of time more or less extended are obviously indispensable to the conduct of the business of a railway company. So also with telegraph companies. Although not absolutely necessary, some regulations as to office hours and as to the number of employes at each office are reasonably required for the successful management of their business, both in their own interest and in that of the public in general. It may be to the interest of some individual, upon a particular occasion, or even at all times, that every office of a telegraph company should be kept open at all hours, and that the working force should be sufficient to receive and deliver a dispatch without a moment's delay. So also, it may be to the interest of a very few that an office should be kept at some point on the line where an office could not be maintained in any way without a loss to the company. If in the first instance the company should be required to keep the necessary servants to keep its business going at all hours, it would result in the necessity of closing many offices or in the imposition of additional charges upon its customers in general, in order to recoup the loss incident to their being maintained. So on the other hand, if they should be required to keep

offices wherever it might result to the convenience of a few persons, additional burdens upon the general public would in like manner result.

It follows, we think, that the public interest demands that these companies should have the power to establish reasonable hours within which their business is to be transacted, and that individual interests must yield.    It seems to us, that the reasonableness of a regulation as to hours of business is sufficiently obvious to suggest to the sender of a message who desires its delivery at an unusually early hour for business, the propriety of making inquiry before he enters into the contract.

In the application of the principles of law to new cases, we should proceed with caution, and therefore we deem it proper to say that our ruling is restricted to the question submitted.    Whether the rule we have announced should be applied to other regulations by telegraph companies, we leave for decision when the question may arise.

This opinion will be certified in answer to the questions submitted.

Delivered January 29, 1894.