## SOUTHWESTERN TELEGRAPH & TELEPHONE CO. v. GEHRING. †

(Court of Civil Appeals of Texas. Galveston. April 22, 1911. Rehearing Denied May 11, 1911.)

1. TELEGRAPHS AND TELEPHONES (§ 51*)—DELAY IN TELEPHONE CONNECTION—CONTRIBUTORY NEGLIGENCE.

Where plaintiff was informed over the long distance telephone that her father had been struck by a street car, but was not seriously injured, and that, if the doctors later found his condition serious, she would be informed, it was not contributory negligence on her part to fail to start at once to her father's bedside, so as to preclude recovery for mental suffering due to the fact that connection was negligently denied at a later hour when it was attempted to tell her that her father was fatally hurt, by which she was prevented from reaching him while still alive.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 35; Dec. Dig. § 51.*]

2. TRIAL (§ 260*) — INSTRUCTIONS ALREADY GIVEN.

Requested instructions, already covered by those given, are properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651; Dec. Dig. § 260.*]

3. NEW TRIAL (§ 162*)—DENIAL CONDITIONED ON REMISSION OF PART OF RECOVERY.

Under Rev. St. 1895, art. 1029a, authorizing the Court of Civil Appeals to require the remission of so much of a recovery as it deems excessive as a condition of refusing to reverse, a similar action of the trial court as a condition of denying a new trial is not error.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 324–329; Dec. Dig. § 162.*]

4. TELEGRAPHS AND TELEPHONES (§ 56*) — FAILURE TO GIVE TELEPHONE CONNECTION—AGENCY OF PERSON CALLING FOR PERSON CALLED.

Where J. requested a long-distance telephone connection, stating that it was for plaintiff's benefit, and to notify her of the dangerous state of her father so that she could come at once, J. was the agent of the plaintiff in so doing, and the facts established a contract relation between plaintiff and the telephone company, entitling her to sue for the negligent failure to give the connection whereby plaintiff was unable to reach her father before he died.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 37; Dec. Dig. § 56.*]

5. TELEGRAPHS AND TELEPHONES (§ 71*) — FAILURE TO DELIVER MESSAGE—AMOUNT OF RECOVERY—MENTAL ANGUISH.

In an action against a telephone company for a negligent failure to give a long-distance connection, whereby plaintiff was deprived of being with her injured father for three hours before he died, during all of which time he was unconscious, a verdict of $1,500 for mental anguish, reduced by the trial court to $1,000, was not so excessive as to require a further reduction at the hands of the appellate court.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 74; Dec. Dig. § 71.*]

Reese, J., dissenting in part.

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by Elsie Gehring against the Southwestern Telegraph & Telephone Company.

From a judgment for plaintiff, defendant appeals. Affirmed.

A. P. Wozencraft, W. S. Bramlett, D. A. Frank, and Harris & Harris, for appellant. Hogg, Gill & Jones and J. C. Townes, for appellee.

REESE, J. This is a suit by Elsie Gehring against the Southwestern Telegraph & Telephone Company to recover damages laid at $1,950 for mental suffering occasioned by her failure to be present at the bedside of her father, C. C. Gehring, before his death. It is alleged that this result was proximately caused by the negligence of defendant, through which a telephone message to plaintiff at La Porte apprising her of the approaching death of her father failed to reach her. Upon trial with a jury, a verdict was returned in favor of plaintiff for $1,500. Deeming this amount excessive, the court stated that, unless a remittitur of $500 was filed, a new trial would be granted. Upon the filing of such remittitur, the motion for a new trial was overruled, and judgment entered for $1,000, from which defendant appeals.

There is very little controversy about the facts, which are as follows: On the evening of August 10, 1908, C. C. Gehring, father of appellee, was struck and injured by a street car in Galveston. He was removed to the hospital, where he lay until about 11 o'clock a. m. August 11th, when he died. Appellee was at the time living in La Porte at the home of D. D. Peden, her brother-in-law. Shortly after the accident she received through Mr. Griffith a telephone message informing her of the accident, but conveying the further information that Mr. Gehring was not seriously injured, and, if it was discovered after examination by the doctors that his condition was serious, he would let appellee know so that she could come to Galveston. Later, about 9:20 o'clock p. m., Mr. Jenkins, another brother-in-law, made an effort to reach appellee through D. D. Peden by telephone over the lines of appellant, the substance of the message being such as to inform appellee of her father's dangerous condition and the likelihood of his death, and to call her at once to Galveston. The operator of appellant at Galveston was informed of the cause, and the urgency of the message, and that it was for the benefit of appellee, who was the daughter of Mr. Gehring, and that the purpose of the call was to have appellee to come to her father at once. Repeated attempts to reach the La Porte office failed that night and until about six o'clock the next morning, when Mr. Jenkins was able to reach Mr. Peden and talk to him over appellant's lines. It is not disputed, and is shown by the evidence, that the failure to reach appellee in response to the call put in about 9:20 o'clock on the night of August 10th was due to the negligence of the operator at La Porte. If this call had been at-tended to with reasonable promptness, appellee could and would have reached her father about 8 o'clock a. m. on August 11th, about three hours before he died. She came to Galveston at the earliest moment after receiving the message on the morning of the 11th, going by way of Houston, and reached the infirmary about 11 o'clock, after her father's death, and as his body was being carried out of the building. As a proximate result of the negligence of appellant, appellee was deprived of the opportunity of being with her father from about 8 o'clock a. m. until 11 o'clock a. m., about three hours, during which time he was alive, but during all of which time Mr. Gehring was unconscious, and not able to recognize or communicate with any one. Appellee was his youngest child, and they were much devoted to each other. Appellee testified that she suffered great mental anguish on account of not having been able to be with her father before his death, and the evidence authorized the conclusion that this is true.

[1] By the first assignment of error appellant complains of the refusal of the trial court to give a charge requested by it, presenting, as a defense to the action, the issue of contributory negligence of appellee in not going immediately to her father on receipt of the first telephone message from Griffith. The message was not of such a nature as to cause serious alarm to appellee, and we are inclined to think that the evidence on this point did not present the issue of contributory negligence as suggested by the charge, and it would not have been error to have refused the charge, if the issue had not been presented at all.

[2] But the court did instruct the jury properly upon this point, and there was for this reason, if no other, no error in refusing the requested charge. There is no merit in the assignment.

The charge requested by appellant, the refusal to give which is made the ground of the second assignment of error, with regard to the time at which appellee could have reached Galveston had the message of Jenkins been promptly transmitted, ignores the fact that, although there were no trains through La Porte that would have enabled her to reach Galveston sooner than she did, appellee could, and the testimony shows that she would, have caught an earlier train from Houston to Galveston by driving a few miles across the country to Genoa or Harrisburg. The law upon this issue was fully and clearly presented to the jury by the charge of the court, and there was no error in refusing the requested instruction.

[3] There is no merit in the fourth assignment of error. It seems to be settled by the authorities that since the enactment of Article 1029a, R. S. 1895, the action of the trial court in a case like this, in requiring a remittitur of the amount of damages awarded

by the verdict, otherwise a new trial for excess will be granted, for which remittitur is then voluntarily entered, does not present ground for reversal of the judgment in the appellate court. Article 1029a, R. S. 1895; Railway Co. v. Johnson, 24 Tex. Civ. App. 180, 58 S. W. 622; Railway Co. v. Jackson, 61 S. W. 440; Railway Co. v. Linthicum, 33 Tex. Civ. App. 375, 77 S. W. 40; Railway Co. v. Rhodes, 35 Tex. Civ. App. 432, 80 S. W. 869. The cases cited by appellant in support of the fourth assignment were all decided before the enactment of the above article of the statute.

[4] There is no merit in the fifth assignment of error. The evidence tended clearly to show that, when Jenkins put in the call for Peden, the agent at Galveston was informed that it was intended also for the benefit of appellee, and it was not error for the court to charge that if this was true Jenkins was the agent of appellee in the matter, and that such facts established a contractual relationship between appellant and · appellee. There was sufficient evidence to show that the agent at Galveston was informed that the purpose of the call was to bring appellee to Galveston at once on account of the serious condition of her father, and the charge of the court clearly presented this issue to the jury.

The sixth and seventh assignments present no merit, and we overrule them without discussion.

[5] By the third assignment of error, appellant complains of the refusal to grant it a new trial on the ground that the verdict and judgment are excessive. The verdict was for $1,500. The trial court required a remittitur of $500, stating that the amount of the verdict was excessive, and that, if remittitur was not entered, a new trial could be granted. The remittitur being entered, the motion for new trial was overruled and judgment entered for $1,000. The evidence fully justifies the conclusion that by reason of the negligence of appellant's agent at La Porte, which was, with commendable candor, conceded by the learned counsel for appellant in his oral argument upon the submission, appellee was deprived of the opportunity of being present at the bedside of her father when he died, and of being with him for about three hours before he died, during all of which time he was, according to the undisputed evidence, unconscious and unable to recognize or communicate with any one. The appellee suffered mental anguish on this account, as is perfectly natural, as the most affectionate relations existed between father and daughter, and to this natural conclusion is added her emphatic testimony on this point, and the testimony of others as to her exhibition of grief. How much of this grief was occasioned by her father's death for which appellant was not responsible, and how much by her failure to reach him before he died, of course

it is impossible to say, but, taking the whole evidence, the majority of the court conclude that this court has no measure by which it can estimate the money value of the mental anguish suffered by appellee for this latter cause, and that this court would not be justified in substituting its judgment as to the proper amount to be awarded for that of the jury and of the trial court in requiring the remittitur of $500, and that, therefore, the assignment should be overruled without requiring further remittitur. To this the writer is not able to agree. The trial court has already by its action said, in effect, that the jury in arriving at the amount of their verdict was actuated by passion or sympathy, or other improper motive, so as to require the interference of the court, as to the amount of the verdict. The trial court has then considered it proper to substitute its judgment for that of the jury as to the amount of the verdict, and we feel sure that, if there had been no remittitur required in the trial court, this court would upon proper assignment of error have refused to allow the judgment to stand for $1,500, and this action would have required the substitution of the judgment of this court for that of the jury. The statute cited clearly authorized this, and equally clearly recognizes the duty of this court to do so, in certain cases, and the necessity of such action to prevent palpable injustice. It is quite true that there is no fixed standard · by which mental anguish can be measured, and it seems difficult to see how a money value can be placed upon it. But parties do place a money value upon it, for which they sue to be compensated in money, and since they do, I cannot bring myself to say that the duty does not rest upon the courts to restrain the ever ready sympathy of juries from finding expression in verdicts which appear to be so unreasonably large that they cannot be reasonably accounted for on any other hypothesis. This has been done in this case by the trial court, and we no longer have the verdict of the jury. There is no uniformity in the decisions from which any guide can be afforded the court in acting upon a question of this kind, and there is little use in consulting authorities. In the case of W. U. Tel. Co. v. Bouchell, 28 Tex. Civ. App. 23, 67 S. W. 159, a case strikingly similar to the present case, a verdict for $1,250 damages for mental anguish was reduced by the Court of Civil Appeals of the Ft. Worth district to $500. In that case, as in this, a daughter was deprived of the opportunity of reaching the bedside of her father and being with him for 3½ hours before his death, during all of which time he was as in the present case unconscious. But, without being controlled to any extent by that case, I think that the judgment for $1,000 is unreasonably large, in fact grossly excessive, and that having departed from the standard set by the jury, and substituted therefor the

judgment of the court, the judgment should not be allowed to stand for more than $500, to which extent a remittitur should be required.

In accordance with the opinion of the majority of the court, the judgment is affirmed, the writer deeming it proper to enter his dissent only as to the amount.

Affirmed.　Justice REESE dissenting as to the amount.

---

JACKSON v. WEIS & LESH MFG. CO.

(Supreme Court of Tennessee.　May 13, 1911.)

1. STATUTES (§ 283*)—PASSAGE—MODE—LEGISLATIVE JOURNALS—PRESUMPTIONS.

The House Journal of 1893, showed that Acts 1893, c. 159, regulating child labor, having regularly passed the House, was sent to the Senate.　The Senate Journal showed that it passed its first reading in the Senate, but did not affirmatively show that it passed its second reading, or that it was referred to any committee.　It did show that it was taken up for passage on its third reading on unanimous consent, and while so pending a material amendment was offered, and the bill passed as amended.　The journals did not show that in reporting the bill back to the House any statement was made to show its amendment in the Senate, but that it was enrolled and signed by the speakers of the two houses in open session and approved by the Governor.　Held, that the law was not unconstitutional, as improperly passed; it being presumed, in the absence of an affirmative showing to the contrary by the journals, that the amendment was concurred in by the House.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 382; Dec. Dig. § 283.*]

2. STATUTES (§ 114*)—TITLE.

The child labor law (Acts 1893, c. 159) is entitled "An act to make it unlawful to employ a child less than 12 years of age in workshops, mines, mills or factories in this state." By Acts 1901, c. 34, an amendment of the act of 1893 was attempted under a title, "An act to amend chapter 159 of the Acts of 1893, being an act entitled 'An act to make it unlawful to employ a child less than 12 years of age in workshops, mines, mills and factories in this state;'" the act of 1901 raising the age of children that might not be so employed from 12 to 14 years.　Held, that the amended act was invalid, as violating Const. art. 2, § 17, providing that no bill shall become a law which embraces matter not expressed in its title.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 145–149; Dec. Dig. § 114.*]

Error to Circuit Court, Madison County; S. J. Everett, Judge.

Action by Mary Alma Jackson, by her next friend, etc., against the Weis & Lesh Manufacturing Company.　Judgment for defendant, and plaintiff brings error.　Affirmed.

Pope & Pope, for plaintiff in error.　W. G. Timberlake, for defendant in error.

LANSDEN, J.　This is an action for personal injuries received by plaintiff in error, Mary Alma Jackson, while in the service of the defendant in error removing skewer pins from the hopper of one of the machines used by defendant in error in the manufacture of

such pins, which resulted in the loss of one of her thumbs.　There are three counts in the declaration, the first and third of which predicate liability of defendant upon an alleged violation of what is generally known as the "child labor law," and the second count placed liability upon common-law negligence.　The trial judge directed a verdict in favor of the defendant below upon the first and third counts, and there was a trial before the court and jury upon the second count, which resulted in a verdict for defendant.　Motions for new trial were made and overruled, and the errors assigned here go to the action of the circuit judge in holding that chapter 159, Acts of 1893, and chapter 34, Acts of 1901, amendatory thereof, were unconstitutional and void.

The circuit judge was of opinion that chapter 159, Acts of 1893, was not constitutionally passed, and the infirmities appearing in the legislative journals, which satisfied him that this was true, he states as follows:

"It appears from the House Journal of 1893, that this child labor law was introduced as Bill No. 6, and it passed regularly its first, second, and third reading, and was sent to the other house, the Senate, where it passed its first reading.　The journal does not affirmatively show that it passed its second reading, or that it was referred to any committee, but does show that it was taken up for passage on its third reading by unanimous consent, and, while pending its third reading, an amendment was offered—and a material amendment, too—to this bill, and the amendment was adopted by the Senate, and the bill then passed on its third reading.　The journal fails to show that in reporting this bill back to the House any statement was made or anything on the journals to show that the bill was amended on its third reading in the Senate, and it simply shows an enrollment to the House, and does not show any concurrence by the House in the Senate amendment.　Hence this act is: invalid.　It did not pass according to the constitutional methods, and you cannot consider either the first or third counts in this declaration; that is, going to the statute of employing a child under 14 years of age."

We infer that his honor was of opinion that, inasmuch as the original act of 1893 was invalid for the reasons stated by him, the subsequent act of 1901, amending the. act of 1893, must likewise fall, because it is amendatory of the original act only.

[1] We cannot concur with the trial judge in the conclusion reached by him with respect to the validity of the act of 1893.　His holding is in direct conflict with the opinion of this court in State v. McConnell, 3 Lea, 333, and State v. Algood, 87 Tenn. 162, 10 S. W. 310.　The first case cited is direct authority for the proposition that the mere