## WESTERN UNION TELEGRAPH CO. v. VANCE.

(Court of Civil Appeals of Texas. Galveston. Oct. 29, 1912. On Motion for Rehearing, Nov. 27, 1912.)

1. TELEGRAPHS AND TELEPHONES (§ 66*)—DELAY IN DELIVERY—ACTIONS—SUFFICIENCY OF EVIDENCE—NEGLIGENCE.

Evidence in an action for negligent delay in delivering a telegram *held* to sustain a finding of negligence in transmitting and delivering the message.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 61–63; Dec. Dig. § 66.*]

2. TELEGRAPHS AND TELEPHONES (§ 66*)—DELAY IN DELIVERY—CAUSE OF INJURY.

Evidence in an action for negligent delay in delivering a telegram announcing the probable death of plaintiff's daughter *held* to show that plaintiff's inability to reach his daughter's bedside before her death was proximately caused by the negligent transmission and delivery.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 61–63; Dec. Dig. § 66.*]

3. TELEGRAPHS AND TELEPHONES (§ 38*)—DELAY IN DELIVERY—NEGLIGENCE—DEFENSES.

That the sender of a telegram did not advise the company that the sendee lived beyond the free delivery limits, nor offer to pay the extra charges for service, was no defense to an action for negligent delay in delivery.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 33; Dec. Dig. § 38.*]

4. APPEAL AND ERROR (§ 1078*)—PRESENTATION BELOW—EXCEPTIONS TO PLEADING.

In absence of any ruling shown by the record upon a special exception to the answer, it will be presumed that such exception was waived, since the record must show that a

ruling upon an exception was made in order to authorize the appellate court to review it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4256–4261; Dec. Dig. § 1078.*]

5. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Any error in admitting evidence was harmless to defendant, where a witness for defendant testified to substantially the same fact.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

6. APPEAL AND ERROR (§ 728*)—BRIEFS—ANSWERS TO QUESTIONS.

Error in overruling objections to questions cannot be held prejudicial, where appellant's brief and assignments of error do not show what answers were made.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3010–3012; Dec. Dig. § 728.*]

7. APPEAL AND ERROR (§ 728*)—RECORD.

The exclusion of a question cannot be held prejudicial to appellant, where the assignment of error does not show what witness' answer would have been.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3010–3012.; Dec. Dig. § 728.*]

8. TRIAL (§ 256*)—INSTRUCTIONS—REQUESTS—"ORDINARY CARE"—"REASONABLE CARE."

An instruction, in an action for negligent delay in transmission and delivery, on the measure of the telegraph company's duty in delivering, was not erroneous for requiring it to transmit in "due time (that is, such time as it would have been delivered by the exercise of reasonable care and diligence in getting it through and delivered)," on the ground that it was only required to use "ordinary care," in absence of a request for a more specific charge; the terms "reasonable care" and "ordinary care" having substantially the same meaning (citing 7 Words and Phrases, 5955).

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*

For other definitions, see Words and Phrases, vol. 6, pp. 5029–5042; vol. 8, pp. 7739–7740, 7779.]

9. APPEAL AND ERROR (§ 1064*)—REVIEW—HARMLESS ERROR—INSTRUCTIONS.

An instruction, in an action for negligent delay in transmitting and delivering a telegram announcing the probable death of plaintiff's daughter, that if plaintiff could, after the receipt of the message, "by the usual and regular means of travel," have reached his daughter's bedside before her death, and failed to make use of such means as he could or should have done, he could not recover, was not affirmative error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

10. TELEGRAPHS AND TELEPHONES (§ 37*)—MESSAGES—DELIVERY.

If the recipient's residence beyond the free delivery limits was not known to the sender of a telegram at the time of its delivery to the telegraph company's agent for transmission, the agent at the receiving office should notify the sender of such fact, so that he might have an opportunity to pay the extra charges.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 24, 29, 32; Dec. Dig. § 37.*]

11. TELEGRAPHS AND TELEPHONES (§ 37*)—DELIVERY—BEYOND FREE DELIVERY LIMITS.

A telegraph company was not justified in abandoning all effort to deliver a telegram merely because the recipient was not found at the address stated, and his actual address was beyond the free delivery limits.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 24, 29, 32; Dec. Dig. § 37.*]

12. TELEGRAPHS AND TELEPHONES (§ 71*)—DAMAGES—NEGLIGENT DELIVERY.

A verdict for $947.50 for failure to promptly deliver a telegram announcing the death of plaintiff's 17 year old married daughter between whom and plaintiff the deepest affection existed was not excessive, though the daughter was unconscious from the sending of the message until she died, and could not have recognized plaintiff.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 74; Dec. Dig. § 71.*]

13. TELEGRAPHS AND TELEPHONES (§ 70*)—DAMAGES—MENTAL ANGUISH—DISCRETION OF JURY.

The jury has a large discretion in estimating damages to be awarded for mental anguish, as from the negligent delivery of a telegram.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 72, 73; Dec. Dig. § 70.*]

14. APPEAL AND ERROR (§ 742*)—RECORD.

Error in admitting evidence cannot be reviewed, where there is no showing in the assignments of error that witness gave the objectionable testimony, except certain statements from the motion for a new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

On Motion for Rehearing.

15. APPEAL AND ERROR (§ 742*)—BRIEFS—ASSIGNMENTS OF ERROR—PROPOSITION.

The office of a proposition under an assignment of error is to specifically present the question of law intended to be covered by the assignment, and the Appellate Court cannot consider any question not suggested by a proposition if the assignment is not relied on as such, nor need appellee answer such questions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

Appeal from District Court, Orange County; W. B. Powell, Judge.

Action by F. Vance against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Holland & Holland, of Orange, and F. J. & C. T. Duff, of Beaumont, for appellant. Bisland, Adams & Bruce, of Orange, for appellee.

REESE, J.    F. Vance instituted this action against the Western Union Telegraph Company in the district court of Orange county to recover damages alleged to have been caused by the negligent failure of defendant promptly to transmit and deliver a telegraphic message sent to him at Orange by his son-in-law, Will Langston, from Cooledge, Tex., informing him that his, plaintiff's, daughter was not expected to live, and noti-

fying him to come to Cooledge at once. The damages were laid at $1,995. A trial with a jury resulted in a verdict and judgment for plaintiff for $947.50, from which defendant prosecutes this appeal.

Will Langston, the husband of the "Ollie" named in the message, who lived at the town of Cooledge, Tex., about 12 o'clock noon on January 2, 1911, delivered to the agent of the appellant at Cooledge for transmission and delivery to appellee, who lived at Orange, Tex., the following message: "Cooledge, Texas, Jan. 2nd, 1911. F. Vance, c/o Orange Power Co., Orange, Texas. Come to Cooledge at once. Ollie is not expected to live. [Signed] Will Langston."

Appellee was the father of the said Ollie. It is not shown exactly when the message was put upon the wire at Cooledge, but, when it reached Houston, it had to be transmitted from that point to New Orleans and back to Orange on account of the wires being "grounded" between Houston and Orange. It appears from the evidence that the wire from Houston to Beaumont between Houston and Orange was grounded east of Beaumont between 4 o'clock and 6 o'clock p. m., on the 2d of January. At 4:15 p. m. and at 5 o'clock p. m. it was grounded east of the Southern Pacific depot at Beaumont and west of Beaumont. The circuit was thus cut off, and messages could not be transmitted from Houston to Orange. The wire was broken and down, caused by the cold weather. The message reached Orange at 6:10 o'clock p. m. on January 2d, and was not delivered to appellee until some time between 9 and 10 o'clock the next morning. Appellee lived in Orange at a place called the Cove, three-fourths of a mile from the telegraph office, and outside of the established free delivery limits. There was a train leaving Orange for Houston at 8:45 o'clock p. m. on January 2d, and, if appellee had received the message before 8 o'clock p. m., he could and would have, by taking this train, been able to leave Houston at 8:15 the next morning for Cooledge, and to have reached the bedside of his dying daughter between 3 and 4 o'clock p. m. the same day, and about 24 hours before her death, which occurred at 4 o'clock on January 4th. There was a train leaving Orange for Houston at 12 o'clock noon on the day the message was received, but the evidence shows that, if appellee had taken this train, he could not have left Houston or reached Cooledge any sooner than he did do by taking the train leaving Orange between 5 and 6 o'clock in the afternoon. Appellee did not take this train leaving at 12 o'clock noon; the reason being that he did not have, and was not able to procure, money sufficient to pay his expenses in time. He, in fact, reached Cooledge as soon as he could after the receipt of the message. His daughter was dead when he reached her. She was unconscious for at least 24 hours before her death, and so remained until her death.

[1, 2] We find that appellant was guilty of negligence in the transmission and delivery of the message as found by the jury, and that as a proximate consequence appellee was unable to reach the bedside of his daughter before her death, and to be with her in her last moments. The evidence is sufficient to support the verdict of the jury as to the amount of damages recovered.

By the first assignment of error appellant complains of the ruling of the court in sustaining plaintiff's special exception to the eighth paragraph of appellant's answer. It is stated in the assignment: That "said special exception and the eighth paragraph of the defendant's second amended original answer being in regard to the defendant's plea that at the time the message in question was delivered to it for transmission to the plaintiff it was given a certain address where plaintiff could be found. That said address was a place within the free delivery limits fixed by the defendant company for the city of Orange. That said address was incorrect, and that the plaintiff could not be located there, but that he was at a point outside of the free delivery limits of the city of Orange, and that the defendant was not under any duty or obligation to deliver the telegram sued on to the plaintiff at such place. That, after the defendant found that the plaintiff lived beyond the free delivery limits, it did not have opportunity and could not demand payment of the extra charges required by the rules of the company for the delivery of messages to such places, and that after it, the defendant, had delivered or attempted to deliver the message at the address given, and it found out that the plaintiff was outside of the free delivery limits of the city of Orange, that it had then discharged its contract, and was no further liable to the plaintiff."

The first and second propositions under the assignment are as follows:

"Where a message is delivered to a telegraph company for transmission at a place within the free delivery limits of the point of destination and the addressee is not found at the address given, but resides beyond the free delivery limits, before delivering the message, the company is entitled to reasonable time after ascertaining the correct address to demand its proper charge for such delivery beyond the free limits.

"It is not negligence for a telegraph company to fail in the delivery of a message where the addressee resides and is found at a different point from the address given in the message, and where a delivery at such different point is upon a different charge and for a different and greater rate from the charge for a delivery at the place addressed."

The third presents substantially the same proposition as the second.

The special exception referred to is as follows, as stated in appellant's brief: "Plaintiff excepts to said answer, the last paragraph thereof, whereby and wherein the defendant alleges that Will Langston did not advise this defendant that the plaintiff lived beyond the limits for the free delivery of such messages, and did not pay or offer or promise to pay to this defendant any sum, etc., because plaintiff's suit herein is upon a contract for the transmission and delivery of a telegraph message, and said petition contains no allegations that the defendant required or demanded any sum whatever from the sender of said message, to wit, Will Langston, for the trouble and expense, if any, in sending said message beyond the full delivery limits, if any, of the city of Orange."

[3] It will be seen that the exception was directed solely to the allegations of the answer, setting up as a defense that the sender of the message did not advise the defendant that the addressee lived beyond the free delivery limits, nor pay, nor offer to pay, the extra charges for such service. This was in fact no defense to the charge of negligence. Telegraph Co. v. Harris, 132 S. W. 878. It will be seen that the exception does not, by any means, go to the extent set out in the assignment and propositions. If it did, it would be a sufficient answer to the assignment that it is nowhere shown in the record that the court did, in fact, make the ruling complained of.

[4] It has been too often decided to require citation of authority that, in order to have the appellate court revise the ruling of the trial court in passing upon exceptions in pleadings it must be shown by some judgment or order of the court that the ruling complained of was in fact made. This is not done with regard to the error complained of in the statement. The rule would be different in case of a general demurrer which was improperly overruled. In the absence of any ruling shown by the record upon this special exception, it will be presumed that it was waived. The assignment is overruled.

[5] If there was any error in allowing appellee to testify, over appellant's objection, as set out in the second assignment of error, as to what the agent at Houston told him with regard to the time of departure of trains by which he could reach Cooledge, the error was not prejudicial in view of the testimony of the witness Kossbiel, joint agent of the railroad company and appellant at Cooledge, as to such fact, his testimony being, in substance, identical with what the agent at Houston told appellee. The assignment is without merit, and is overruled.

[6] The third and fourth assignments of error complain of the action of the court in overruling objections of appellant to questions propounded by appellee to certain witnesses. It does not appear anywhere in the brief, either in the bill of exceptions set out in the assignments of error, or elsewhere in the statements under the propositions, what answers the witnesses made to the questions. Obviously we cannot say that the testimony was prejudicial. It only inferentially appears from the bill of exceptions, set out in the assignments, that the witnesses answered at all. We cannot be required to examine the statement of facts to determine, first, whether the witnesses answered the questions objected to, and, second, what the testimony was. The assignments must be overruled with the several propositions thereunder.

[7] As to the fifth assignment, it is nowhere shown what the witness' testimony would have been if he had been permitted to answer the question objected to. We cannot assume that his answer would have been material, or of such a nature that its exclusion was prejudicial to appellant. The assignment is overruled.

The sixth assignment of error is without merit, and is overruled without discussion.

There is nothing in the charge referred to in the seventh assignment of error which could be construed as assuming that defendant had admitted its liability.

[8] By the eighth assignment of error appellant complains of the tenth paragraph of the court's charge, on the ground that in instructing the jury as to the measure of appellant's duty in the transmission and delivery of the message the court uses the language "due time (that is, such time as it would have been delivered by the exercise of reasonable care and diligence in getting it through and delivered)." The ground of objection is that appellant was required by law to transmit and deliver the message in such time as it could be done in the exercise of ordinary care, under all the circumstances and conditions existing at the time. We think the terms "reasonable care" and "ordinary care" have substantially the same meaning. Black v. Railway Co., 30 Neb. 197, 46 N. W. 430; Railway Co. v. Faith, 175 Ill. 58, 51 N. E. 807; 7 Words and Phrases, 5955. If it was desired that the jury be more fully instructed as to the effect of the extraordinary conditions prevailing as affecting such ordinary care, a special charge should have been requested. The court elsewhere in the charge properly defines negligence to be the want of ordinary care, and properly defines ordinary care, and in that connection instructs the jury that, if it found that defendant was not negligent in the transmission and delivery of the message, the plaintiff could not recover.

[9] It was not error prejudicial to appellant to tell the jury that if appellee could, after the receipt of the message "by the usual and regular means of travel," have reached the bedside of his daughter in time

to have reached her before her death, and fails to make use of such means as he could or should have done, he could not recover, as set out in the ninth assignment. Certainly it was not affirmative error. The assignment is overruled.

The tenth, eleventh, and twelfth assignments are addressed to certain portions of the charge of the court and present no error. That portion of the charge complained of in the twelfth assignment is not susceptible of the construction sought to be given to it. The copy of the charge as given in the brief is entirely misleading. The charge, as shown by the record, instructs the jury that, under the facts indicated, the law presumes that plaintiff "suffered mental anguish and he would be entitled to damages therefor, if you should find for the plaintiff under the instructions hereinafter given you," etc. As given in the brief, this portion of the charge is so punctuated (incorrectly) as to wholly distort its meaning.

We might very well refuse to consider the thirteenth assignment for want of a sufficient statement of the evidence upon which it is predicated. The assignment complains of the refusal, upon request of appellant, to charge the jury to return a verdict for the defendant. The evidence clearly raises the issue of negligence on the part of appellant in the failure both to transmit the message to Orange, and in its delivery to appellee after its receipt by the agent there. At least four hours elapsed after the delivery of the message to the agent at Cooledge before the transmission of messages direct from Houston to Orange was interrupted by the grounding of the wires between those points, so far as is shown by the evidence. It was delivered at Cooledge about noon, and did not reach Orange until 6:10 p. m. It is true that it was found that appellee could not be found at the place which the agent at Orange took to be the "power house," and that he lived outside of the free delivery limits at a place known as the Cove, but this place was only three-fourths of a mile from the telegraph office. Admitting that on account of the 2d of January being authorized by orders of appellant to its employés to be taken as a legal holiday, on account of the 1st of January falling on a Sunday, and the change in the office hours, appellant's agent testified that he was informed before he closed the office at 7 o'clock that appellee lived in the Cove, and that he so informed the messenger boy. If inquiry had been made in that section of the town, the evidence leaves no doubt that appellee could have been very easily found, and the telegram delivered, in ample time for him to have taken the 8:45 train that night. It is true that this was outside of the free delivery limits, and, admitting that this entitled appellant to demand an additional charge for the delivery of the message, it is not shown that by the terms of the contract or by any rule of the company known to appellee or his agent, the sender, at the time, this additional charge had to be paid before delivery of the message.

[10] Nor was any such contract alleged. Telegraph Co. v. Harris, supra. Even if such contract had been alleged and proven, we think that it is the law that, if the fact of the residence of the addressee of the message beyond the free delivery limits is not shown to have been known to the sender of the message at the time of its delivery to the agent for transmission, it would be the duty of the agent at the receiving office to notify the sender of such fact so that, he might have opportunity to pay the increased charge, and if there is not time to do so, in case of such a message as this, we are inclined to think that the residence of the addressee, so short a distance beyond the free delivery limits, would not excuse the agent from making any effort to deliver the message. It does not appear that the fact that appellee lived beyond such free delivery limits, in fact, had anything to do with the delay, for the messenger boy was instructed to deliver the message that night about 6:30 o'clock, before the agent left at 7 o'clock, and after the agent was informed that appellee lived at the Cove, and the next morning (but too late) the agent took steps to apprise appellee of the receipt of the message so that he might get it. The evidence, we think, was sufficient to raise the issue of negligence, and the court did not err in so holding and in refusing the requested charge. It would not have enabled appellee to reach Cooledge any sooner if he had taken the train leaving at 12 o'clock noon, as we have shown, and there was no error in refusing the requested charge referred to in the fourteenth assignment.

There was no prejudicial error in giving the charge referred to in the fifteenth assignment, nor in refusing to give the charges requested, the refusal of which is complained of by the sixteenth assignment. Whether or not the office at Orange should have been kept open, as on ordinary business days, until 8 o'clock p. m., or might have been closed at 6 o'clock, it was undisputed that it was kept open until 7 o'clock, that this message was received at 6:10, was given to the messenger boy for delivery, and that before closing and leaving the office the agent was informed that appellee lived at the Cove, and so informed the messenger boy. It does not appear that this difference in office hours, whether or not it would have excused the delay, had anything to do therewith. Appellant requested the court to charge the jury, in substance, that, if they believed that appellee lived beyond the free delivery limits in Orange, their verdict should be for defendant. We do not think this charge is a correct measure of appellant's liability under the facts of this case, and it was not error to

refuse it. Telegraph Co. v. Ayres, 47 Tex. Civ. App. 557, 105 S. W. 1166. It is not shown that any effort was made to deliver the message on the evening of its receipt, further than to inquire for appellee at the ice plant, and at the light plant, where he was not known, but it is undisputed that it was known to the agent before he closed his office at 7 o'clock, in fact at 6:30, when the messenger boy returned after going to the two places referred to, and that he told the messenger boy that appellee lived at the Cove, which was not about a mile beyond the free delivery limits, as stated in appellant's brief, but only about three-quarters of a mile from the telegraph office. It does not appear but that any sort of inquiry at the Cove that evening would have disclosed the exact place where appellee could be found and resulted in prompt delivery of the message.

[11] As we have said, appellant's agent was not justified in abandoning all efforts to deliver the telegram merely because appellee was not found at the address given, and his address when learned, was found to be beyond the free delivery limits. The court did not err in refusing to give the special charge requested, as set out in the eighteenth and nineteenth assignments of error.

[12] Appellant complains that the verdict is excessive in view of the fact that appellee's daughter was unconscious from the time the message was sent until she died, and could not have recognized nor communicated with him. We do not think the assignment can be sustained. A verdict for $1,000 was allowed by the court to stand in the case of Telephone Co. v. Gehring, 137 S. W. 754, the writer dissenting, in which the facts were similar. Telegraph Co. v. Sloss, 45 Tex. Civ. App. 153, 100 S. W. 354. The deceased Mrs. Langston, although married, was a mere child of 17 years of age. There was shown to have existed the deepest affection between appellee and his children.

[13] As long as damages are allowed to be recovered for mental anguish alone in this class of cases, juries must be allowed a large latitude in estimating the damages. The assignment is overruled.

[14] What we have already said renders a discussion of the twenty-first assignment of error unnecessary, if we were required to consider it as it is presented. There is no statement showing that the witness gave the testimony objected to, save certain statements from the motion for a new trial. This is not sufficient.

We have considered all of the assignments of error and the several propositions thereunder, and have concluded that none of them presents any ground for reversing the judgment.

Finding no error in the record the judgment is affirmed.

Affirmed.

## On Motion for Rehearing.

It is urged on motion for rehearing that this court erred in overruling appellant's eleventh, fifteenth, and sixteenth assignments of error. These assignments relate to the charge of the court and the refusal of special charges as to the effect of the order of appellant authorizing employés to treat January 2d, the day the message was sent, as a legal holiday, the first falling on a Sunday, and to keep the office of appellant open only from 8 o'clock to 10 o'clock a. m., and from 4 o'clock to 6 o'clock p. m. on that day. It will be seen from the opinion that the message in question was received at 6:10 p. m., when it was delivered to the messenger, and that the office at Orange was then open and remained open until 7 o'clock p. m. It was further shown, which is however not stated in the opinion, that the messenger was engaged in delivering messages at least up to 7 o'clock. The point now urged in this motion for a rehearing is that any service performed by the agent after 6 o'clock p. m. was a gratuitous service on his part which appellant was not obligated to perform, and that it is therefore not liable for any negligence of its agents in the performance of this service. The following cases are cited in the motion in support of this contention: Telegraph Co. v. Rawls, 62 S. W. 136; Telegraph Co. v. Weeks, 128 S. W. 674; Telegraph Co. v. May, 8 Tex. Civ. App. 176, 27 S. W. 760; Telegraph Co. v. Neel, 86 Tex. 368, 25 S. W. 15, 40 Am. St. Rep. 847. By referring to appellant's brief, it will be seen that none of the propositions stated under the several assignments referred to even suggest the question here presented. They refer only to the duty of the appellant to keep its office open after 6 o'clock p. m., and none of the authorities cited in the motion for rehearing are cited in the brief, nor any authorities, in fact, bearing upon this question. Of the cases cited the strongest is Telegraph Co. v. Neel, supra, which arose upon a certified question. After reviewing the cases and referring to the conflict of authorities, the Supreme Court concludes its opinion as follows: "In the application of the principles of law to new cases, we should proceed with caution, and therefore we deem it proper to say that our ruling is restricted to the question submitted. Whether the rule we have announced should be applied to other regulations by telegraph companies we leave for decision when the question may arise." The question submitted and answered can only be intelligently applied by reference to the state of facts upon which it was based, which were as follows, as correctly stated in the syllabus: "A telegram was sent from Yoakum to Cuero, Tex., July 29, 1891, at 4 o'clock a. m. The message reached Cuero at 4:50. The office hours at Cuero were from 7 a. m. to 7 p. m.

The carrier boy did not reach the office before 7 a. m., and the message was promptly delivered after the opening of the office." In the present case it appears from the undisputed evidence that the office at Orange was kept open until 7 o'clock. The message was not received until 6:10. The messenger boy was on hand, and, as stated by the agent, had other messages, some of which the agent telephoned to the addresses. In short, it appears that the office was open and the usual work of a telegraph office was being done until 7 o'clock. There is nothing to indicate that the order of the appellant with regard to office hours, differing from those on ordinary business days, on January 2d, was anything more than to authorize agents to observe these hours. The rule was for their benefit, and did not require the office to be closed, except between the hours named. In the Neel Case the messenger boy did not come to the office until the time for opening, when the message was promptly delivered. The telegraph company was without means of such delivery until the office actually opened in accordance with the established rule. The facts, we think, distinguish this case from the Neel Case and others cited, even conceding that appellee was bound by the rule authorizing employés to treat the 2d of January as a legal holiday. It is true that the evidence would have authorized a finding of negligent delay in the transmission of the message from Cooledge to Orange, but we do not think that it required such finding as a matter of law, and therefore we cannot say that the jury did not base their verdict on the negligent delay in delivering the message after it reached Orange. In such case, if this case falls under the rule laid down in the Neel Case, and is not distinguishable, some of the assignments of error referred to should have been sustained, if the question had been properly presented in the brief. But we doubt very much whether this question can be raised for the first time in a motion for a rehearing.

[15] The office of a proposition under an assignment is to specifically present the question of law intended to be embraced by the assignment, and where an assignment is not relied upon as in itself a proposition, but the pleader undertakes to state propositions thereunder, we think that this court is not authorized to consider any question not suggested by such propositions, nor is the appellee expected to make answer to them. Rule 30 (142 S. W. xiii). Any other rule would not be fair to appellee, who is only required to answer the question presented by such propositions.

We conclude that the motion for rehearing should be overruled, and it is so ordered.