WESTERN UNION TELEGRAPH CO. v. WHITE.

(Court of Civil Appeals of Texas. Amarillo. May 18, 1912. Rehearing Denied June 22, 1912.)

1. TELEGRAPHS AND TELEPHONES (§ 66*) — DELAYED TELEGRAM—EVIDENCE.

A telegram reading, "Your husband killed by team in T. to-day," did not charge the telegraph company with any knowledge rendering it liable for injury sustained by the addressee because of failure to bury her husband at any other point than T.; and the admission of evidence on such issue was error, though the court directed the jury that they could not find for the plaintiff thereon.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 61–63; Dec. Dig. § 66.*]

2. TELEGRAPHS AND TELEPHONES (§ 54*) — CONTRACT—BINDING EFFECT.

Provisions of a contract under which a night message was sent, that the company would receive messages for delivery not earlier than the morning of the next day, and that messages would be delivered free within the established free delivery limits, but a special charge would be made for delivery at a greater distance, were not in contravention of public policy.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 39–47; Dec. Dig. § 54.*]

3. TELEGRAPHS AND TELEPHONES (§ 37*) — TELEGRAM—DELIVERY.

A telegraph company was not under obligation to "promptly transmit and deliver" night messages received before 6 p. m.; its duty to make delivery beginning only with the business hours of the next ensuing day.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 23, 24, 29, 30, 32; Dec. Dig. § 37.*]

4. TRIAL (§ 194*) — INSTRUCTION — INVADING JURY'S PROVINCE.

Where, in an action for damages arising from delay in the delivery of a telegram sent in the evening, the pleadings and evidence raise

an issue as to whether the telegram was a day or a night message, it is an invasion of the jury's province to instruct that it was the company's duty to promptly transmit and deliver the same; such being the law only in case it was a day message.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

**5. TELEGRAPHS AND TELEPHONES (§ 37*) — FREE DELIVERY REGULATION—BINDING EFFECT.**

A regulation of a telegraph company establishing free delivery limits at a radius of one mile in cities of more than 5,000 is binding upon the addressee of a telegram, unless abandoned or waived by the company.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 23, 24, 29, 30, 32; Dec. Dig. § 37.*]

**6. TELEGRAPHS AND TELEPHONES (§ 37*) — MESSAGES—FREE DELIVERY REGULATION— ABANDONMENT.**

The free delivery by local agents of messages on a few occasions outside the free delivery limits fixed by a rule of a telegraph company will not constitute an abandonment of the rule by the company, unless such delivery is with the company's knowledge.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 23, 24, 29, 30, 32; Dec. Dig. § 37.*]

**7. TELEGRAPHS AND TELEPHONES (§ 66*) — TELEGRAM—DELAYED DELIVERY—ABANDONMENT OF RULE.**

In an action for damages arising from delay in the delivery of a telegram, the telegraph company's abandonment of its free delivery limit rule, through its knowledge and acquiescence in free deliveries made in violation of such rule, may be shown by either direct or circumstantial evidence.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 61–63; Dec. Dig. § 66.*]

**8. TELEGRAPHS AND TELEPHONES (§ 67*)—DELAYED MESSAGE—RIGHT OF RECOVERY.**

In an action for damages arising from delay in the delivery of a telegram, resulting in the addressee's not being present at the burial of her husband, she could not recover on the theory that she could and would have had the burial postponed until she arrived, but could recover only on the theory that the message could have been delivered in time for her to have attended the burial at the time it was held.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 64–68; Dec. Dig. § 67.*]

Appeal from District Court, Potter County; J. N. Browning, Judge.

Action by Mrs. Etta M. White against the Western Union Telegraph Company. From judgment for plaintiff, defendant appeals. Reversed and remanded.

See, also, 143 S. W. 958.

J. W. Veale, of Amarillo, N. L. Lindsley, of Dallas, and Spoonts, Thompson & Barwise, of Ft. Worth, for appellant. Gustavus, Bowman & Jackson, of Amarillo, for appellee.

GRAHAM, C. J. This case is before us on an appeal by writ of error from a judgment rendered on the verdict of a jury in the district court of Potter county on the 24th day of September, 1910, in favor of the defendant in error and against the plaintiff in error for the sum of $2,000.

The cause of action is based on the alleged negligence of plaintiff in error in failing to properly and expeditiously transmit and deliver a telegram message, which in its entirety is as follows:

Form 45.      Night Message.      [Exhibit A.]

The Western Union Telegraph Company, Incorporated.

24,000 offices in America. Cable service to all the world.

Robert C. Clory, President and General Manager.
[In red type.]

| Receiver's No. | Time Filed. 7:40 P M | Check. 8 Paid, Night.   30¢ |
|---|---|---|

Send the following night message subject to the terms on the back hereof, which are hereby agreed to      [In red type.]

Ft. Sumner, N. M., July 17, 1909.

To Mrs. E. M. White, Organizer Ladies' Circle, Amarillo, Texas.

Your husband killed by team in Tucumcari to-day.      Simon Katz.

A. Y 10 45 P M A—E. B.
[Above in pencil.]

*Read the notice and agreement on back.*
[Red type.]

In red type printed on back of message:

"Night Message.

*"All night messages taken by this Company are subject to the following terms:*

"The Western Union Telegraph Company will receive messages, to be sent during the night, for delivery not earlier than the morning of the next ensuing day, at reduced rates.

"To guard against mistakes or delays, the sender of a message should order it *repeated;* that is, telegraphed back to the originating office for comparison. For this, one half the regular rate is charged in addition. It is agreed between the sender of the following message and the Company, that said Company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery of any unrepeated message, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery or for nondelivery of any *repeated* message beyond ten times the sum received for sending the same, unless specifically insured, nor in any case for delays arising from unavoidable interruption in the workings of its lines, or for errors in ciphers or obscure messages. And this Company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other Company when necessary to reach destination.

"Correctness in the transmission of a message to any point on the lines of this Company can be *insured* by contract in writing,

stating agreed amount of risk, and payment of premium thereon, at the following rates, in addition to the usual charge for repeated messages, viz., one per cent. for any distance not exceeding 1,000 miles, and two per cent. for any greater distance. No employee of the Company is authorized to vary the foregoing.

"No responsibility regarding messages attaches to this Company until the same are presented and accepted at one of its transmitting offices; and if a message is sent to such office by one of the Company's messengers, he acts for that purpose as the agent of the sender.

"Messages will be delivered free within the established free delivery limits of the terminal office. For delivery at a greater distance, a special charge will be made to cover the cost of such delivery.

"The Company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within thirty days after the message is filed with the Company for transmission.

"Robert C. Clowery,
"President and General Manager."

The record shows, without contradiction, that E. M. White and the deceased were husband and wife; that they lived in Ravia, Okl., as such for about six years and until shortly before the death of the husband, which occurred near Tucumcari, N. M., some time during the day of July 16, 1909, as the result of a runaway accident; that his body was brought into Tucumcari early in the morning of July 17, 1909, in a badly bruised and mangled condition, and that it was not identified until about the middle of the day of July 17, 1909; that soon thereafter a telegram was sent by a member of a fraternal order, who resided at Tucumcari, to another member of the same order, who resided at Ft. Sumner, N. M., where the deceased had some acquaintances; this message resulting in the message, above copied, being sent to the defendant in error.

The record also shows that deceased was a stranger in and around Tucumcari, but that he had a few acquaintances in and about Ft. Sumner. The record also shows that the defendant in error had been visiting for about three weeks her relatives, who lived near Amarillo, and in one of the additions to said city, but that, aside from the family of her said relatives, she had but few, if any, acquaintances in or near Amarillo; that her relatives had themselves lived in or near Amarillo but about three months, though they had a post office box rented in the Amarillo post office, in which the postmaster had been requested to place the mail of the defendant in error.

The record also shows, without contradiction, that the message was written on one of the company's night message blanks, and delivered to one of its agents at Ft. Sumner some time between 4 and 8 o'clock p. m. of July 17, 1909 (the witness Katz having testified that he delivered the message to the agent at Ft. Sumner about 5 o'clock, while the company's agent testified that it was delivered to the company at its office in Ft. Sumner at about 7:40); and that during the night of July 17, 1909, the message was transmitted to the Amarillo office, and about 8 o'clock on the morning of July 18, 1909, was placed in the hands of one of its messenger boys, who at once sought to find the addressee by going to and inquiring at the hotels and the post office, and also by looking in the city directory and locating all the Whites whose names were given therein, and then calling on them; that, this messenger boy having been out with the message for a time between a half hour and an hour and a half, and failing to find or locate the addressee, it was turned into the Amarillo office, and in a short time was placed again in the hands of a messenger boy, who also failed to locate the addressee and again returned the message to the Amarillo office at about 11:45 a. m.; that at 8:45 p. m. of the same day, and after certain railway trains had arrived in Amarillo, the message was again sent out by another messenger boy, who also failed to find or locate the addressee, whereupon the company's agent at Amarillo called up the ladies' club in Amarillo, with a view of locating defendant in error, and told them that Mrs. White was supposed to be an organizer of ladies' clubs, but, having failed to locate Mrs. White, a service message was sent by the Amarillo office, on the morning of July 19, 1909, to Mr. Katz at Ft. Sumner, N. M., notifying him that delivery had not been made of his message, and could not be without a better address, in reply to which the Amarillo office was informed that no better address could be given. No further effort seems to have been made to deliver the message.

The record shows that during the month of July, 1909, the city of Amarillo, within its corporate limits, had a population of more than 5,000 and about 10,000 souls; that there were additions to said city at that time, though outside of its corporate limits, containing a population of some three or four thousand souls, in one of which additions the relative of the defendant in error resided and had his place of business; and that said residence and place of business were more than 1½ miles on a direct line, and about 2½ miles by the most practicable route, from the office of the plaintiff in error in Amarillo.

The record also shows that during the month of July, 1909, plaintiff in error had in force, and had for some time, a general rule establishing its free delivery limits at a radius of one-half mile from its office in cities and towns of less than 5,000 people, and

at a radius of one mile from its office in cities and towns of more than 5,000 people.

The record shows that deceased was buried in Tucumcari, between 4 and 7 o'clock p. m. on July 18, 1909, and that the message in controversy was not delivered to the addressee until July 22, 1909, when, she having learned by accident of the death of her husband, the message was called for in Amarillo and delivered to her.

The record shows that if the addressee had gotten the message at any time before 10 o'clock p. m. of July 17, 1909, she could and would have reached Tucumcari before her husband was buried; but it also shows that, unless the message had been delivered to her before 10 o'clock p. m. on July 17, 1909, she could not have reached Tucumcari earlier than 8 o'clock p. m. on July 18, 1909.

Defendant in error pleaded, and she was permitted to introduce proof on the trial, to the effect that if the message had been delivered to her at any time during July 18, 1909, she could and would have had the burial of her husband postponed until she could have arrived at Tucumcari; but the evidence tends to show that, because of the mutilated condition of the body and the conditions of the weather, it would have been very difficult, if possible, to preserve the body in a proper condition for burial after July 18, 1909. Defendant in error pleaded and introduced evidence tending to show that, had the message been delivered to her on July 17, 1909, she would have had her husband buried in Ravia, Okl., where she and her husband had two children buried.

The record shows, also, that Ft. Sumner is located about 65 miles further from Amarillo than is Tucumcari, and is also in New Mexico.

Plaintiff in error submits this case in this court on 23 assignments of error; but, as we have reached the conclusion, from a careful examination of the entire record, that the case must be reversed because of errors herein pointed out, and because many of the matters complained of will, no doubt, not arise on another trial, we will not take up and discuss the assignments separately, except those on which the reversal is based.

Under the first assignment, complaint is made that the trial court erred in overruling a general demurrer urged by plaintiff in error to the pleading of the defendant in error; but we think the pleading objected to sufficient as against a general demurrer, and therefore overrule this assignment.

Under various assignments, the plaintiff in error complains that the trial court erred in overruling its special exceptions to those portions of the pleading of the defendant in error, wherein she sought to recover for a failure to be able to bury her husband in Ravia, Okl., and in admitting evidence tending to support said portion of her pleading, and showing that she had two children buried there.

[1] As we view the law, there is nothing contained in the telegraph message, or in any facts alleged in the pleadings of defendant in error, that would warrant her in recovering for injury she may have sustained because of failure to bury her husband at any point other than Tucumcari, N. M.; and we therefore think the assignment based upon the action of the court on these special exceptions, as well as those based on the action of the court in admitting the evidence bearing on that issue, should be sustained. W. U. Telegraph Co. v. Carter, 85 Tex. 580, 22 S. W. 961, 34 Am. St. Rep. 826.

It is true that the trial court, in his charge to the jury, directed them that they could not find damages for defendant in error on this issue; but in a case like this, where the sympathetic nature of the human heart is so prone to be wrought upon, we think that all the legal rights of both parties to the controversy should be carefully guarded; and to do so requires that neither improper pleading nor evidence should be allowed to go to the jury. The effect of such pleading and evidence cannot always be rejected by the court's charge. G., C. & S. F. Ry. Co. v. Levy, 59 Tex. 542, 46 Am. Rep. 269.

[2] Under the fifteenth assignment of error, it is contended that the trial court erred in giving the fifth paragraph of his main charge to the jury, which is as follows: "If you find and believe from the evidence that the telegram in question was delivered to the defendant's agent at Ft. Sumner, N. M., prior to 6 o'clock p. m. on July 17, 1909, by Simon Katz, that he paid the said agent the required charge or toll for transmitting and delivering the same to plaintiff, then the defendant owed the plaintiff the duty to promptly transmit the same to Amarillo on that day and deliver it with reasonable diligence to the plaintiff; but if the said message was delivered to said agent by said Katz after 6 o'clock p. m. on said 17th day of July, and paid the charges thereon as a night message, then and in such case the defendant would not be required to transmit and deliver the same earlier than the morning of the next succeeding business day, to wit, the 18th day of July, 1909."

There is in the record neither allegation nor proof as to the office or business hours of the company at Ft. Sumner, N. M., in July, 1909, or at any other time, though the proof does show that during July, 1909, the office or business hours of the company in Amarillo were from 8 o'clock a. m. to 10 o'clock p. m.

The plaintiff in error pleaded especially that it handled the message in controversy under and in accordance with all its terms and provisions, and pleaded same as a valid and binding contract between it and the de-

fendant in error, and introduced the entire message and contract in evidence, and proved up its execution.

While there may be some provisions in the contract not binding as being in contravention of public policy, we think it cannot be successfully contended that the provision as to its business hours, or as to reasonable regulations as to its free delivery limits, are not valid and binding; and, as defendant in error, neither by her pleading nor her proof, sought in any legal way to avoid these provisions, they should be held as binding as any other portion of the contract under which the message was carried.

[3] As the telegraph contract expressly provides that it is a night message, which means that the company was under no obligation to deliver, or seek to deliver, same until after the beginning of its business hours at the place of delivery the next day, it was most clearly error for the trial court to direct the jury that, if the message was delivered to the company's agent at Ft. Sumner, N. M., before 6 o'clock on the evening of July 17, 1909, it was its duty to promptly transmit and deliver the same.

[4] Even if the pleadings and the evidence had been such as to raise an issue of fact as to whether the message, under the contract, was to go as a day or night message, it would still have been error for the trial court to so direct the jury, as that would have been clearly a charge on the weight of the evidence, and an unwarranted invasion of the province of the jury. W. U. Telegraph Co. v. McCoy, 31 S. W. 210.

[5] There are two other important legal questions raised by the various assignments of plaintiff in error under the record in this case; one of them being the question of the right of the defendant in error to recover because of the free delivery limit regulation, when taken in connection with the uncontradicted fact that the addressee was residing without said limits, and no arrangements had been made with the company for a delivery of the message, other than its free delivery limits. We are inclined to the opinion that if the free delivery regulation, as claimed by the company, was adhered to by it, and had not in any way been abandoned or waived, under the other facts shown in this record, this regulation would constitute a complete bar to a recovery.

[6] Defendant in error, however, sought to avoid the effect of this claimed rule or regulation by showing that on a few isolated occasions the local agent of the company had actually delivered messages outside of the claimed limits, and without extra charge, and on this evidence the trial court submitted to the jury the question of whether or not the free delivery limit rule had not been abandoned by the company.

[7] We are of the opinion that when a rule has been established by the company which is reasonable it cannot be held to have been waived or abrogated without bringing home to the company actual knowledge of its disregard by its employés, and by showing an acquiescence by the company in such disregard of such rule, though the knowledge of the company and its acquiescence may be proven by circumstances, as any other fact. On another trial of this cause, if the evidence should show a rule promulgated by the company, providing for reasonable free delivery limits, and there should be any evidence tending to show a disregard by the employés of the company of such rule, the principle of law above announced should be embodied in the charge of the trial court. W. U. Telegraph Company v. Rains, 63 Tex. 27.

[8] The remaining question raised by the assignments is whether or not defendant in error can recover in this case, as the evidence shows, without conflict, that she could not have reached Tucumcari before the burial of her husband after the message could have been delivered to her with the exercise of any kind of diligence (if the message was sent as a night message), unless as a result of her having had his burial postponed; and contention is made that, under the facts in this case, no recovery should be allowed on the theory that she could or would have had the burial postponed. We are inclined to the opinion that, under the other facts in this case, the principle of law announced in the case of W. U. Telegraph Co. v. Linn, 87 Tex. 7, 26 S. W. 490, 47 Am. St. Rep. 58, applies, and that defendant in error could not legally recover on the theory that she could and would have had the burial postponed until she could have arrived at Tucumcari. If she recovers, she must do so on the theory that the company, by the exercise of ordinary care and diligence, could have delivered to her the message in time for her to have attended the burial on the evening of July 18, 1909.

Under appropriate assignments, complaint is made that paragraphs 3 and 4 of the court's charge were so worded as to require the company to deliver the message at all hazards, and to use ordinary care and diligence in so doing, instead of requiring it to use ordinary care and diligence to deliver same. While these paragraphs of the court's charge are not in the usual and ordinary language used in charging on this question, we are not prepared to agree altogether with plaintiff in error. In view of another trial, however, we suggest that the trial court so frame its charge on the issues covered in the third and fourth paragraphs of its charge as not to be open to the criticism made, which can be easily done.

Because of the errors pointed out, the judgment of the trial court will be reversed, and the cause will be remanded; and it is so ordered.