## WESTERN UNION TELEGRAPH CO. v. WHITE.

(Court of Civil Appeals of Texas. Amarillo.
Dec. 6, 1913. Rehearing Denied
Jan. 10, 1914.)

1. COURTS (§ 405*) — TERRITORIAL SUPREME
COURT — APPEALS TO FEDERAL COURTS —
STATUTES — "UNLESS OTHERWISE PROVIDED
BY LAW."

Under Judiciary Act (Act Cong. March 3,
1891, c. 517, §§ 5, 6, 15, 26 Stat. 827, 828 [U.
S. Comp. St. 1901, p. 549]), designating the
cases which may be taken to the federal Su-
preme Court and giving the Circuit Court of
Appeals, unless otherwise provided by law, ap-
pellate jurisdiction over final judgments of the
district and circuit courts and territorial Su-
preme Courts, an appeal from a territorial Su-
preme Court from a judgment for $2,000, ren-
dered in a suit between parties having diverse
citizenship, lies only to the Circuit Court of
Appeals, notwithstanding Act Cong. March 3,
1885, c. 355, 23 Stat. 443 (U. S. Comp. St. 1901,
p. 572), providing for appeals to the federal
Supreme Court since the words "unless other-
wise provided by law" in the act of 1891 refer
only to contemporaneous or subsequent acts
and do not include provisions of prior acts.

[Ed. Note.—For other cases, see Courts,
Cent. Dig. §§ 1097–1099, 1101, 1103; Dec. Dig.
§ 405.*]

2. EVIDENCE (§ 34*)—JUDICIAL NOTICE—FED-
ERAL STATUTES.

The courts of a state will take judicial no-
tice of federal statutes.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 49, 50; Dec. Dig. § 34.*]

3. COURTS (§ 96*) — PRECEDENTS — FEDERAL
COURTS—EFFECT IN TERRITORY.

A decision of the United States Circuit
Court of Appeals of the Eighth circuit, which
is the appellate court of the territory of New
Mexico, that there can be no recovery of dam-
ages for mental anguish occasioned by delay in
the delivery of a telegram is the law of the
territory of New Mexico on that point, but the
decision does not cover a case where, in addi-
tion to an action for mental anguish, plaintiff
seeks to recover the price paid for transmit-
ting the message.

[Ed. Note.—For other cases, see Courts,
Cent. Dig. §§ 325, 327, 328, 334; Dec. Dig. §
96.*]

4. EVIDENCE (§ 35*)—LAWS OF FOREIGN JU-
RISDICTION—BURDEN OF PROOF.

A telegraph company, when sued in Texas
for mental anguish occasioned by its failure to
deliver a message received in New Mexico for
transmission to one temporarily in Texas, has
the burden of proving the laws of New Mexi-
co as to the right to recover for mental an-
guish in order to defeat a recovery on the
ground that, under the laws of New Mexico,
there can be no recovery for mental anguish.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 35, 51; Dec. Dig. § 35.*]

5. EVIDENCE (§ 35*)—LAWS OF FOREIGN JU-
RISDICTION—MANNER OF PROOF.

The laws of a sister state must be estab-
lished by proof like any other fact.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 35, 51; Dec. Dig. § 35.*]

6. TELEGRAPHS AND TELEPHONES (§ 68*) —
DAMAGES — MENTAL SUFFERING — LAWS OF
FOREIGN JURISDICTION.

Proof that the common law prevails in
New Mexico does not show that damages for
mental anguish occasioned by a delay in deliv-
ering a message are not recoverable there, and
does not defeat an action against a telegraph
company for mental anguish occasioned by the
failure of the company to promptly deliver a
message received in New Mexico for delivery
in Texas.

[Ed. Note.—For other cases, see Telegraphs
and Telephones, Cent. Dig. §§ 69, 70; Dec. Dig.
§ 68.*]

7. TRIAL (§ 136*)—QUESTION FOR COURT OR
JURY—LAWS OF FOREIGN JURISDICTION.

Where the evidence of the laws of a sister
state consists of reports of judicial decisions of
the state, the effect of the decisions is for the
trial court, though, where the evidence con-
sists of parol testimony of experts, the jury
must determine what the foreign law is.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 318, 320, 321, 323–327; Dec. Dig. §
136.*]

8. EVIDENCE (§ 571*)—OPINION EVIDENCE—
LAWS OF SISTER STATES — QUESTION FOR
COURT.

The testimony of a lawyer of the territory
of New Mexico as to the course a case would
take under the laws of the territory and what
in his opinion was the court of final resort is
not binding on the trial court, where the mat-
ter depends on federal statutes of which the
trial court must take judicial notice.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 2395–2398; Dec. Dig. § 571.*]

9. EVIDENCE (§ 80*)—PRESUMPTIONS—LAWS
OF SISTER STATES.

Where, in an action against a telegraph
company for mental anguish for delay in the
delivery of a telegram received in New Mexico
for delivery in Texas and for the price paid for
transmission, the company sought to show the
law of New Mexico and to prove that where an
action was for mental anguish alone the law of
the forum controlled, the court correctly in-
dulged in the presumption that the law of New
Mexico was the same as the law of the forum,
authorizing a recovery for mental anguish.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. § 101; Dec. Dig. § 80.*]

10. TELEGRAPHS AND TELEPHONES (§ 37*) —
DELIVERY OF MESSAGE — FREE DELIVERY
LIMITS.

Where a telegraph company establishes
free delivery limits, the burden rests on it to
ascertain whether the addressee of a message
resides within or without the limits and, if nec-
essary, make demand for the requisite fee for
delivery beyond the limits, and, in the absence
of such demand, the duty rests on it to deliver
without reference to the residence of the ad-
dressee.

[Ed. Note.—For other cases, see Telegraphs
and Telephones, Cent. Dig. §§ 23, 24, 29, 30,
32; Dec. Dig. § 37.*]

11. TELEGRAPHS AND TELEPHONES (§ 38*) —
DELAY IN DELIVERY OF MESSAGES — ERROR
IN TRANSMISSION—EFFECT.

Where a message received by a telegraph
company for transmission was addressed to the
sendee, followed by the words "Organizer of
Ladies' Circles," was during transmission
changed to "Organizer of Ladies' Clubs," and
there was no club in the city of destination,
but there was a ladies' circle there as an aux-
iliary of the Woodmen of the World, the com-
pany could not excuse a delay in delivery on the
ground that the message was addressed to the
sendee in care of a ladies' club.

[Ed. Note.—For other cases, see Telegraphs
and Telephones, Cent. Dig. § 33; Dec. Dig. §
38.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**12. APPEAL AND ERROR (§ 742*)—QUESTIONS REVIEWABLE—ASSIGNMENTS OF ERROR.**

Assignments of error complaining of the refusal of requested charges will not be considered, where the statements do not set out any testimony showing the applicability of the charges, nor refer to the record as required by the rules of the court, nor show that the substance of the charges requested was not embodied in the general charge.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

**13. TELEGRAPHS AND TELEPHONES (§ 54*)—DELAY IN DELIVERY OF MESSAGES—ESTOPPEL—LIMITATION OF LIABILITY.**

Where the receiving agent of a telegraph company agreed to transmit the message immediately and collected the day rate, the company was estopped to claim that its liability for delay in delivery was governed by the part of the contract relating to night messages.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 39–47; Dec. Dig. § 54.*]

**14. APPEAL AND ERROR (§ 742*)—QUESTIONS REVIEWABLE—ASSIGNMENTS OF ERROR.**

An assignment of error which is not a proposition in itself, and is not presented as a proposition, and has neither proposition nor statement subjoined, will not be considered, especially where the matters therein urged were not shown to have been called to the attention of the trial court in the motion for new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

Appeal from District Court, Potter County; J. N. Browning, Judge.

Action by Mrs. Etta M. White against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Jno. W. Veale, of Amarillo, and N. L. Lindsley, of Dallas, for appellant. Gustavus & Jackson, of Amarillo, for appellee.

HALL, J. On a former appeal the facts of this case were clearly stated, as reported in 149 S. W. 790, to which reference is made. In this opinion we will make such additional statement as may be required in considering the several assignments presented in appellant's brief. The pleadings of the appellee alleging her residence to be in New Mexico set out the message and allege that the defendant contracted to deliver the same promptly and with ordinary care to plaintiff; that at said date plaintiff resided in Currie county, N. M., but was temporarily residing in Amarillo, Tex., while her husband was in the country near Tucumcari, N. M.; that a casualty befell plaintiff's husband at Ft. Sumner, N. M., as was indicated in the message, and the body of the deceased taken to Tucumcari in the plaintiff's absence and buried; that if the message had been seasonably delivered plaintiff could and would have gone by auto or otherwise to Tucumcari in time to have been present at the funeral and burial of her husband, which she would have done but for the defendant's negligence in failing to deliver the message; that the message which was dated July 17, 1909, was not delivered until several days thereafter, and if the same had been delivered that day she could have been present at the funeral or would at least have received the message in time to have had the burial of the body postponed, which could have been done, so as to have enabled her to attend the funeral. She alleged that she had been in Amarillo for several weeks where she was known to quite a number of people and was receiving mail and communications addressed to her at said place; that Simon Katz delivered the message to appellant's agent for transmission about 4:30 o'clock p. m. on July 17th, telling the agent that appellee was residing with a sister and had a post office box by which she could be easily located; that he paid 40 cents for the transmission of the message, and that the agent agreed to send it immediately; that appellee had been engaged in organizing ladies' circles; that thereafter she paid to and refunded to Simon Katz 40 cents paid defendant by him; that the message was negligently transmitted, using the word "club" for "circle," and the word "train" for "team," which changes proximately contributed to the failure of delivery. The suit was for mental and physical suffering and to recover the cost of the message. The defendant demurred generally, specially, pleaded the general issue, alleged that it was a corporation organized under the laws of New York, and specially answered in substance that the contract for the transmission of the message was made in what was then the territory of New Mexico, and was to be performed in Amarillo, Tex.; that, having been made in the territory of New Mexico, it was therefore one which was governed and controlled by the laws of such territory; that under the laws of the territory as then existing mental anguish, unaccompanied by physical pain or injury and such as is here claimed in this suit, was not actionable as construed by the courts of last resort governing the territory, and that there could be no recovery under the laws of said territory, where the contract was made in cases of this character. Further, that if it received said message, as claimed by plaintiff, on the 17th day of July, 1909, then it received it at 7:40 p. m. on said day and with the express understanding that it should be sent to its office at Amarillo as a night message, for the consideration of the reduced rate paid for such service; that said message was sent with the express agreement and understanding between the parties making the contract that the same should be transmitted and delivered only after the opening of the office hours of the company at Amarillo on July 18, 1909, and it therefore owed no duty under the contract made for the transmission of the said message to the plaintiff to make delivery of the same on July 17th or prior to

the opening of the defendant's office hours on the morning of July 18th. Defendant further alleged that under the terms and conditions attached to said message, and subject to which the same was sent, it was an unrepeated message, and defendant would not be liable for any mistakes made in the transmission thereof in consideration of the reduced rate; that it was sent with the express understanding that it should only be delivered within the established free delivery limits of the terminal office, and that if delivered at a greater distance a special charge should be and would be made to cover the costs of said delivery; that in accordance with its contract it transmitted the message to Amarillo, at 8 a. m. on July 18, 1909; that defendant immediately sent its servants throughout the city of Amarillo and made proper and diligent search for the addressee, and, failing to find the plaintiff, the defendant, at 11:05 a. m., wired Ft. Sumner, N. M., and its office at said place, asking for a better address and advising its agent at Ft. Sumner that the message could not be delivered; that the defendant's agent at Ft. Sumner called on the sender, Simon Katz, who was unable to give any better address; that said message remained in the office of the defendant, subject to be called for until about the 22d day of July, 1909, when it was called for by plaintiff and delivered to her; that at said time the city of Amarillo was a place of about 14,000 population; that plaintiff did not reside nor was she within the free delivery limits of the city of Amarillo, but, in truth and in fact, resided in what is known as Glenwood addition to the city—more than two miles from defendant's office in Amarillo by the nearest and most practical route; that the failure of Katz, who was plaintiff's agent, to give a more definite address, was the proximate cause of her failure to receive the message seasonably. In reply to this pleading the plaintiff filed a supplemental petition containing general and special exceptions, and specially setting up the fact that defendant was estopped to claim the message was a night message and to be transmitted as such, because of the fact that it had collected charges at day rates; and further under oath plead failure of consideration to the stipulation on the .back of the message. The trial was before a jury, resulting in a verdict in favor of plaintiff for $2,000.

[1-3] According to the view we take of the case, the most important question is raised by appellant's fourth assignment of error. It is contended under this assignment that the court should have either peremptorily instructed the jury that under the laws of the territory of New Mexico no recovery could be had for mental anguish as a basis for actual damages, unaccompanied by physical pain or injury, or else should have submitted the issue to the jury for determination. Appellant introduced one McElroy, an attorney

of Tucumcari, N. M., to prove the laws of the territory on this point. His testimony is somewhat contradictory, and his meaning uncertain upon some points. The substance of it is that there is no decision of the territorial Supreme Court upon the question, and no territorial statute relating to it, but that if the case had been filed in New Mexico its determination would have been controlled entirely by the common law; that the amount involved, being only $2,000, the case could not be appealed from the territorial Supreme Court to the United States Supreme Court, but that, in his opinion, it would be appealable to the Circuit Court of Appeals of the Eighth circuit. On cross-examination, however, he expressed grave doubts upon this point. He further testified that the common law, in so far as it was not in conflict with or modified by statute or constitution, or any treaty of the United States, was now and at the time this cause of action arose in force in New Mexico; that the Supreme Court of the United States had designated the Circuit Court of Appeals of the Eighth district as the tribunal in which cases appealed from the territorial Supreme Court should be heard. Appellant then introduced in evidence the entire opinion of the court in the case of Western Union Telegraph Co. v. Burris, 179 Fed. 92, 102 C. C. A. 386, decided by the Circuit Court of Appeals for the Eighth circuit. This was introduced for the purpose of proving what the law of New Mexico was relative to the recovery of damages for mental anguish arising from the failure of the telegraph company to deliver a message in the absence of a statute conferring the right. McElroy, the New Mexico expert, testified that he thought this decision would control the decisions of the territorial court on that question and that it is the law of New Mexico. Upon cross-examination, he stated that the Supreme Court of New Mexico would not necessarily follow the decision in the Burris Case, but that as a general rule the New Mexico territorial courts observe the rule of stare decisis.

Section No. 6 of the act of Congress of March 3, 1891 (c. 517, 26 Stat. 828), known as the Judiciary Act (4 Fed. Stat. Ann. 409 [U. S. Comp. St. 1901, p. 549]), is in part as follows: "The Circuit Courts of Appeals established by this act, shall exercise appellate jurisdiction to review by appeal or by writ of error, final decisions in the district court and the existing circuit courts in all cases other than those provided for in the preceding section of this act, unless otherwise provided by law, and the judgment or decrees of the Circuit Courts of Appeals shall be final in all cases in which the jurisdiction is dependent entirely upon the opposite parties to the suit or controversy, being aliens and citizens of the United States or citizens of different states; also in all cases arising under the patent laws, under

the revenue laws and under the criminal laws and in admiralty cases," etc. Section 15 of the same act (4 Fed. Stat. Ann. 431) provides that the Circuit Court of Appeals in cases in which the judgments of the Circuit Courts of Appeals are made final by the act, shall have the same appellate jurisdiction by writ of error or appeal to review the judgments, orders, and decrees of the Supreme Courts of the several territories as by the act they may have to review the judgments, orders, and decrees of the district and circuit courts, and for that purpose the several territories shall by orders of the Supreme Court, to be made from time to time, be assigned to particular circuits.

Appellee contends that under the act of March 3, 1885, section 1, c. 355, 23 Stat. 443 (4th Ed. Fed. Stat. Ann. 463 [U. S. Comp. St. 1901, p. 572]), providing that no appeal or writ of error shall hereafter be allowed from any judgment or decree in any suit at law or in equity, in the Supreme Courts of any of the territories of the United States, unless the matter in dispute, exclusive of costs, shall exceed the sum of $5,000, is effective, and by its provisions would limit the right of appeal in this case, if filed and prosecuted in New Mexico, to the territorial Supreme Court, and while, in section 6 of the act quoted, the above decision of the Eighth Circuit Court of Appeals would be final, "unless otherwise provided by law," that the act of March 3, 1885, is a law providing otherwise and denying the right of appeal from the territorial Supreme Court in this case, because the amount in controversy is less than $5,000. In Lau Ow Bew v. U. S., 144 U. S. 47, 12 Sup. Ct. 517, 36 L. Ed. 340, it is said that the words, " 'unless otherwise provided by law' were manifestly inserted out of abundant caution, in order that any qualification of the jurisdiction by contemporaneous or subsequent acts should not be construed as taking it away, except when expressly so provided. Implied appeals were intended to be thereby guarded against. To hold that the words referred to prior laws would defeat the purpose of the act and be inconsistent with its context and its repealing clause." In the Paquete Habana v. U. S., 175 U. S. 677, 20 Sup. Ct. 290, 44 L. Ed. 320, the court said: "It is settled that the words 'unless otherwise provided by law,' in this section, referred only to provisions of the same act, or of contemporaneous or subsequent acts, and do not include provisions of earlier statutes. Mason v. Pewabic Min. Co., 153 U. S. 361 [14 Sup. Ct. 847, 38 L. Ed. 745]; American Construction Co. v. Jacksonville, etc., R. R. Co., 148 U. S. 372 [13 Sup. Ct. 158, 37 L. Ed. 486]; Hubbard v. Soby, 146 U. S. 56 [13 Sup. Ct. 13, 36 L. Ed. 886]." Section 5 of the Judiciary Act, designates the cases which may be taken from the federal, district, and circuit courts direct to the Supreme Court and clearly does not include the instant case. There being allegations show-

ing diverse citizenship, and this suit, being for only $2,000, if filed in New Mexico would necessarily be filed in the territorial rather than the federal courts, and the statutes quoted above (of which we must take judicial notice) make the Circuit Court of Appeals for the Eighth circuit a court of last resort. Hence we conclude that the law as declared in the Burris Case, supra, is the law of that jurisdiction, and would control the decision of the case if the action had been brought and prosecuted in New Mexico. While it is held in that case that mental anguish alone is not recoverable for failure to deliver or delay in delivering a death message, where no claim is made for personal injury or pecuniary loss, Riner, J., uses this language: "The action here is to recover damages for mental anguish because of the negligence of the defendant in failing to deliver the telegram, and it is therefore not an action upon contract but in tort. The tort, which is the gist of the action, is the negligence of the defendant in failing to perform a duty imposed upon it by law." He further quotes with approval the language of the Supreme Court of Arkansas in Western Union Telegraph Co. v. Ford, 77 Ark. 536, 92 S. W. 529, 7 Ann. Cas. 228, as follows: "In fact, the right of an addressee to recover damages at all is not based upon contract as none exists;" and proceeds: "If the action is one in tort, and we think it is, the plaintiff's right of recovery is governed by the law of the state wherein the act of negligence occurred." The form of the remedy—the method of pursuing it—is regulated by the lex fori. By reason of the fact that the testimony in that case showed that the negligence occurred in St. Louis in the state of Missouri, and it was further conceded that under the laws of Missouri, where the negligence occurred, there can be no recovery for mental anguish alone, unaccompanied by personal injury or pecuniary loss, it was held that a plaintiff was not entitled to damages by reason of negligence occurring in Missouri.

[4, 5] The burden was upon the telegraph company in this case to prove the laws of New Mexico upon this issue, and the laws of a foreign state must be established by proof, like any other fact.

[6] It is true that McElroy testified that the common-law rule prevailed in New Mexico and would control the decision of this case, but Conner, C. J., in Western Union Telegraph Co. v. McNairy, 34 Tex. Civ. App. 389, 78 S. W. 969, said that proof that the common law prevailed in New Mexico does not show that damages for mental anguish are not recoverable there, and does not defeat an action against a telegraph company for mental anguish occasioned by the failure of the company to promptly deliver a telegram delivered to it in New Mexico for delivery in Texas. Appellant's evidence, in our opinion, proves that, if the telegram in question had originated in New Mexico and that

its destination was some point in New Mexico, the case would be appealable to the Eighth Circuit Court of Appeals, and that mental anguish would not be an element of damages, but that, if the telegram originated in New Mexico to be delivered to the addressee at some point in a foreign state, the law of the forum would govern the rights of the parties. The Burris Case does not decide what the rights of a plaintiff would be even in the courts of New Mexico, where, in addition to an action for mental anguish, plaintiff sought to recover the price paid for transmitting the telegram and to that extent fails to prove what the law of New Mexico is with reference to this particular action even in that jurisdiction. Edison, J., in Western Union Telegraph Co. v. Sloss, 45 Tex. Civ. App. 153, 100 S. W. 354, said: "Plaintiff in error alleged that the laws of Arizona upon the question involved were different from those of Texas, but, before we would be authorized to say that the court below erred in not giving the jury plaintiff in error's peremptory instruction, we must conclude that the uncontroverted evidence showed what the laws of Arizona upon the question were, and that they were different from those of Texas. The expert testimony embraced in the record shows that the courts of Arizona have never passed upon the question under consideration, neither has the Supreme Court of the United States." While in this case we think the Circuit Court of Appeals for the Eighth circuit being the court of last resort for this litigation, if filed in New Mexico, yet that court in passing upon the question in the Burris Case, holding that the lex fori controls, proves too much to entitle plaintiff to a peremptory instruction or even to have the matter submitted to the jury.

[7] It is said in St. L. & S. F. Ry. Co. v. Conrad, 99 S. W. 209: "Where the laws of one state are sought to be proven in another state, and the evidence thereof 'consists entirely of statutes and reports of judicial decisions of the former, the construction and effect of the statutes and decisions are usually for the court alone.' But where the decisions are conflicting or inferences of fact must be drawn, or where the evidence consists alone of the parol testimony of expert witnesses as to the construction given a statute by the tribunals of the state where the statute was enacted, the question of what the foreign law is becomes one of fact for the determination of the jury." Talbot, J., further quoting from Kline v. Baker, 99 Mass. 253, states the rule in the following language: "When the evidence consists of parol testimony of experts as to the existence or prevailing construction of a statute, or to any point of unwritten law, the jury must determine what the foreign law is, as in the case of any controverted fact depending upon like testimony." "The rule that the fact of a foreign law must be prov-

ed to the jury, like any other fact, while questions of competency and of construction are for the court, is that which now generally obtains." Wharton on Conflict of Laws (3d Ed.) vol. 2, § 773. The same author, in section 773a, uses this language: "There is nevertheless a decided difference of opinion among the courts as to the respective functions of the court and jury in this connection. If the statements be taken to mean merely that the jury are to ascertain whether a particular statute has been enacted or certain judicial decisions have been rendered in a foreign jurisdiction, and that the court is to then determine the construction and effect of such statute or judicial decisions, no difficulty is encountered in separating the functions of the court and the jury. Some of the later decisions expressly adopt this position, and the tendency of the later cases as a whole is perhaps in this direction. Some of the cases which take this view expressly refer the construction and effect of the foreign law, when evidenced by statutes or judicial decisions, to the court upon the general principle of evidence that the construction of written instruments or documentary evidence is for the court. The application of this general principle to the subject under consideration seems to be generally conceded, or at least not denied when the evidence consists of a single statute or judicial decision," etc. We think this the rule by which we should be guided in the decision of this case.

[8] The opinion in the Burris Case having been introduced, the effect of the opinion was for the trial court. The testimony of McElroy, with reference to the course the case would take under the laws of New Mexico, and what in his opinion was the court of final resort, was not binding upon the trial court, because these were matters depending entirely upon the federal statutes of which the trial court must take judicial notice. The witness' testimony that there was neither statute nor decision of the territorial Supreme Court relative to the question, and that its decision rested in the common law, and that the Supreme Court of the United States had placed New Mexico in the Eighth Circuit Court of Appeals district were undisputed. In our opinion, there was no fact to be submitted to the jury, since there was no controversy upon any part of the testimony of McElroy, except upon those questions settled by the United States statutes and the language of the decision itself, which he attempted to construe. Since these were matters for the court, we think there was no error either in refusing to give the peremptory instruction or in refusing to submit the issue to the jury.

[9] The evidence having failed to show what the law of New Mexico was in this particular case, and, on the other hand, appellant having proved that where the action was for mental anguish alone the law of the

forum would control, we think the trial court was correct in indulging the presumption that the law of New Mexico in this case was the same as it is in Texas.

[10] Plaintiff filed the following exception: "(7) The allegations setting out the terms on the reverse side of the message and the allegation pertaining thereto in reference to delivering messages within established free delivery limits, in Amarillo, Tex. (are insufficient), because defendant wholly fails to show or allege that it or its agent demanded from the party sending said message any extra charge for transmitting and delivering said message beyond its delivery limits, and, further, because it was defendant's duty to request a special charge from the sender to guarantee delivery of such telegram, to the plaintiff, and defendant fails to allege or show that such extra charges were demanded by its agent either from the sender at Ft. Sumner, N. M., or from plaintiff at Amarillo, Tex."

The court having sustained this exception, such action forms the basis of appellant's first assignment of error. Upon the back of the message, amongst others, appeared the following stipulation: "Messages will be delivered free within the established free delivery limits of the terminal office. For delivery at a greater distance, a special charge will be made to cover the cost of such delivery." By appropriate propositions, appellant insists that it was not incumbent on defendant to ask for the extra charges necessary to make the delivery outside of its free delivery limits, when it had no notice that the addressee resided without such limits. This question was carefully considered and discussed at length by the Supreme Court, speaking through Dibbrell, J., in Western Union Telegraph Co. v. Harris, 148 S. W. 284, holding that, where a telegraph company established free delivery limits, the burden rests upon the company to ascertain whether the addressee of a message resides within or without such limits, and, if necessary, to make demand for the requisite fee for delivery beyond the limits. So that, in the absence of such demand, the duty rests on the telegraph company to deliver the message without reference to the residence of the addressee; and where this exception from liability is interposed to an action by the addressee, and the plea fails to allege that a demand was made by the company on the sender for an extra delivery charge and that such extra charge being demanded the sender failed to pay or guarantee the same, the plea was insufficient. Upon the authority of this case appellant's first assignment of error is overruled. It was the duty of appellant to exercise ordinary care to deliver the message in question whether appellee resided within or without appellant's delivery limits. It was neither alleged nor proven that any notice was mailed to appellee in Amaril-

lo, but the allegations are simply that an effort was made to find appellee by a messenger boy and by 'phoning. Telegraph Co. v. Vance, 151 S. W. 904; Western Union Telegraph Co. v. Houghton, 82 Tex. 561, 17 S. W. 846, 15 L. R. A. 129, 27 Am. St. Rep. 918. The action of the court in sustaining the eighth special exception was not, as contended by appellant, in effect, a holding that the law required telegraph companies to insure the safe transmission and delivery of its messages. The second assignment is overruled.

[11] The third assignment of error is predicated upon the refusal of the court to peremptorily instruct the jury to find in appellant's favor, because, as insisted by defendant, the uncontradicted evidence shows that the message was addressed to plaintiff in care of the "Ladies' Club," and that she did not reside within the city limits of Amarillo, and that there was no such club in Amarillo as the "Ladies' Club" or "Ladies' Circle." The uncontradicted evidence discloses that there was a ladies' circle in Amarillo with a large membership; that it was an auxiliary of the Woodmen of the World, which had a still larger membership. It further showed that the message was negligently transmitted in changing the words "Organizer of Ladies' Circles," to "Organizer of Ladies' Clubs." Katz, the sender of the message, testified that he told the receiving agent that any Woodman could tell where appellee could be found because she was an organizer for the Woodmen's Circle. This assignment is therefore overruled.

[12] The fifth, sixth, and seventh assignments are defectively briefed, in that they do not set out any testimony in the statements following the assignments, tending to show that the charges refused would be applicable thereto. No references are made to the record, as required by the rules. C. R. I. & G. Ry. Co. v. Thompson, 124 S. W. 144; Railway v. Olds, 112 S. W. 787; C. R. I. & G. Ry. Co. v. Trout, 152 S. W. 137. Nor is it shown that the substance of these charges was not given in the general charge.

[13] In this connection, however, we will state that the plaintiff plead and proved that the defendant's receiving agent agreed to transmit the message immediately, and collected 40 cents charges, which were shown to be the day rate. Under these facts, defendant was estopped to claim that its liability was governed by that part of the contract relating to night messages.

The eighth assignment of error is without merit, because there is sufficient evidence in the record to show that the body of plaintiff's husband could have been held and the funeral postponed until her arrival. The proposition under the eighth assignment of error, which by reference in appellant's brief is made the proposition under its ninth assignment, is not germane. However, the er-

ror, if any, in the admission of the testimony of the witnesses Patterson and Neafus was cured by the admission of the testimony of the embalmer, Koch, without objection, and the further testimony of Neafus, showing that the Woodmen's Lodge at Tucumcari had the body in charge, and he, as its presiding officer, was actively managing the arrangements relative to its disposition.

[14] The tenth assignment of error is objected to by appellee because it is not a proposition within itself, is not presented as a proposition, and has neither proposition nor statement subjoined; and further does not show that the matters therein urged were called to the attention of the court in a motion for new trial. These objections are well taken and the assignment is considered waived.

The eleventh assignment is disregarded for the same reason.

Since there is no reversible error in the record, the judgment is affirmed.